Sed per curiam.

Clearly this letter cannot operate as a will. Though no particular form of words is necessary to give validity to a will, yet all the books agree, that the a7iimus testandi is an indispensable ingredient. There must be an advised purpose to make a present disposition of the party’s estate. Here it is but the signification of an intention to do a future act, and so not the testament itself, which must contain a present and perfect consent. Swinb. 8, 9.
It was then insisted, that if the letter could not be construed as a will, it might be considered as a contract, which would be enforced in equity. The agreement was reasonable in itself. The uncle, though married, had no children. He desired a prop to lean on in his advanced age, and accordingly pressed his sister to send over an unmarried son, by her first husband, who on the sole conditions of his obedience, and coming without followers, should be the heir of his whole estate. The nephew, in pursuance of the invitation, left his native country, and deserted all his prospects there ; and if he has been obedient, and followed all his uncle’s directions, of which the present jury are the com *325 petent triers, he has become a purchaser for valuable consideration. The known rule in equity is, that what ought to r* be done shall be considered as done, except in the case [*326 of an estate tail contracted to be sold. 2 Vez. 634. It is of no moment that there is no seal to the instrument. An agreement may be made out in equity, by proving an instrument, from the nature of which equity will infer an agreement. 1 Pow. on Contracts 323. And from a subsequent transaction, equity will raise an agreement accessory to a precedent transaction, where the circumstances warrant such an inference. Ib. 325. Thus, it has been decreed that bonds have been considered as evidences of agreements, and obligors held to a specific performance, and not allowed to forfeit the penalty. 10 Mod. 517, 518. 2 Equ. Ca. Abr. 22, pl. 20, 21. A letter will in equity amount to an agreement, and be binding on the person signing it, if another person by acting upon it shew his acceptance of the propositions therein contained. 1 Pow. Contr. 287. As in Moor v. Hart, 2 Cha. Rep. 147. S. C. 1 Vern. 201. Warkford v. Foltherly, 2 Vern. 322. S. C. Freem. 291. And Bird v. Blosse, 2 Vent. 361. A consideration may arise, by doing or permitting somewhat to be done, to the prejudice or loss of one of the parties. 1 Rol. Abr. 22, pl. 23. It is not absolutely necessary, that the consideration for a contract, imports some gain to him that makes the contract; but it is sufficient, that the party in whose favour the contract is made, foregoes some advantage or benefit which otherwise he might have taken or had, or suffers some loss in consequence of placing his confidence in another’s undertaking. 1 Pow. Contr. 344. This rule meets precisely the present case; and as it was said by Ld. Hardwicke, in Grosvenor v. Lane, 2 Atky. 181, the letters written by Mr. Peake to the aunt of the intestate, must be taken not as a mere proposal only, or a bare hint of his intention, but an absolute appropriation of the fortune by the second husband for the benefit of the infant. So in the instance before the court, the letter wrote by the uncle is more than a proposition, and amounts to an absolute engagement to make the nephew heir of his whole estate, on certain terms which have been complied with. One shall not recover in ejectment against the terms of his covenant, that the defendant shall quietly enjoy the land. Cowp. 600.
After the cause had been fully argued by the counsel for the plaintiff, the Chief Justice delivered the unanimous opinion of the court to the jury, that this letter was not evidence of'such a contract as ought specifically to be executed under all its circumstances. Courts of law in this state have in a variety of instances exercised chancery powers, in order to prevent injustice. The necessity of the case gave rise to this jurisdiction, which has been sanctified by the constitution. [*327 But to enforce the specific execution of contracts, which a court of equity would not decree, would set all property afloat, and be *327 dangerous in the extreme. The decreeing of a specific performance is in the discretion of the chancellor, and must not be considered as an universal rule. In many instances it has been refused'. Here the uncle has reserved to himself the sole right of judging of his nephew’s obedience to his directions, and has not submitted the determination of that point to a court and jury. The agreement was not absolute on the part of the uncle, but merely optional with him whether his nephew should succeed to his estate. Nor are we authorized to say in the present dispute, that his conduct was unreasonable. If Henry Goble has sustained any damages under all the circumstances of the case, his personal representative may have the same fairly assessed by a jury in a proper suit. His aunts were co-heiresses with his mother, and are entitled to two third parts of the premises, and it is fortunate for the landlord, who sets up the present defence, that he can re’cur to three covenants of general warranty to repair himself in damages, in case of a recovery against his tenant.
Cited in 2 Watts 150.
Messrs. M. and S. Levy and Brinton, pro quer.
Messrs. E. Tilghman and M‘Kean, pro def.
Verdict pro quer. for two third parts of the premises.