## ST. JOHN *against* BENEDICT and another.

Where a deed has been executed pursuant to a *written* agreement between the parties, *parol* evidence is inadmissible to show a *resulting trust.*

A bill for the specific performance of an agreement is addressed to the sound judicial discretion of the Court, in the exercise of its extraordinary jurisdiction; where, therefore, the agreement appears to have been made to defeat or defraud a creditor of the plaintiff, or an intervening purchaser at a Sheriff's sale, under a judgment and execution against him, a specific performance will not be decreed.

THE bill, (filed *June* 13, 1818,) stated, that the plaintiff, on the first of *January*, 1807, purchased and took an assignment of a contract, made *October* 31, 1806, between *William Thayer*, and an agent of the *Pulteney* estate, for the purchase of lot No. 35, in township No. 13, in the

*March* 26th, *and May* 4th.

1822.

ST. JOHN
v.
BENEDICT.

third range of townships in the county of *Ontario*, con-taining 148½ acres of land, by which the agent covenanted to convey to *T.* the lot, in fee, on the payment of 371 dol-lars and 25 cents, in two annual payments, with interest, &c. That the plaintiff, immediately after the assignment of the contract to him, entered into possession of the land, and has since been in possession, (excepting such part as has been sold by him,) having made improvements thereon, and the lot was now worth 1000 dollars. That *Thayer*, at the time of the contract, paid 61 dollars and 80 cents, and the plaintiff has since paid to the agent of the *Pulteney* estate, 200 dollars. That on the 22d *Novem-ber*, 1816, *Isaac Herrington*, defendant, entered into a contract with the plaintiff, for the purchase of fifty acres of the land for 500 dollars ; and paid 175 dollars, and agreed to pay the residue to the agent of the *Pulteney* estate, when it should be called for. That on the last day of *December*, 1816, or the first of *January*, 1817, the plaintiff and *H.*, at the office of the said agent, agreed that the original contract with *Thayer* should be given up and cancelled, and that *H.* should take a new contract, in his own name, for the whole lot ; and that on paying the balance due, being about 273 dollars, to the agent, a deed should be ex-ecuted to him, and he was to retain the *fifty acres* from the north end of the lot, and convey the residue, being 98½ acres, to the plaintiff. The original contract was accord-ingly cancelled, and a new contract entered into between the agent of the *Pulteney* estate and *H.* for the whole lot. That on the 15th of *February*, 1817, *H.*, without the knowledge of the plaintiff, paid to the agent the ba-lance due on the contract, and took a deed in his own name for the whole lot ; and *H.* afterwards conveyed the whole lot to the defendant, *Benedict* ; and which the plain-tiff alleged to have been done fraudulently, and with a view to defeat his claim to the 98½ acres. That the de-fendant, *B.*, has brought an action of ejectment in the Su-

preme Court, against the plaintiff, to recover possession of the 98½ acres. The bill prayed for relief, and that the defendants might be decreed to execute a conveyance to him of the 98½ acres; and for an injunction against proceeding in the ejectment suit, and for general relief.

An injunction as to any execution at law was accordingly issued.

The defendant, *Benedict*, put in his answer, in which he stated, that a judgment was entered up against the plaintiff on the 23d of *February*, 1816, at the suit of *Ira Griffin*, on which an execution was issued, by virtue of which the Sheriff of *Ontario* sold and conveyed all the right, title, and interest of the plaintiff in the lot No. 35, containing 148 acres, describing the same by metes and bounds, to *Lemuel Hotchkiss*, as the highest bidder, for 15 dollars; and that the plaintiff never apprized *H.* of the judgment, execution, and sale, until after *H.* had paid him the 175 dollars, and that *H.* was afterwards obliged to purchase the lot of *Hotchkiss*, who conveyed the same to him, by deed, bearing date the 18th of *January*, 1817; and *H.* afterwards paid the agent of the *Pulteney* estate 378 dollars, and took a conveyance of the whole lot, of which the plaintiff was apprized, and made no objection. That *H.*, on the 25th of *September*, 1817, for the consideration of 300 dollars, sold and conveyed the lot to the defendant, *B.* The defendant, *B.*, denied all knowledge that the plaintiff had or claimed to have any title to any part of the lot. He said that the plaintiff was in possession of the 98½ acres, and had told the defendant, *B.*, that his right and title had been sold at auction, and was extinct, and that he had nothing more to do with the land. The defendant, *B.*, denied all fraud or collusion with *H.*, and insisted on his right to the whole lot.

The bill was taken *pro confesso* against *Herrington*.

Proofs were taken in the cause; and the material facts are stated in the opinion delivered by the Court.

*March 26th.*    The cause was brought to a hearing.

*S. M. Hopkins,* for the plaintiff, contended, 1. That it was established by the decree, entered *pro confesso* against *Herrington,* and by the proofs, taken in the cause, that *H.* held the agreement between him and the agent of the *Pulteney* estate, *in trust,* that when the contract was performed, and the lot conveyed, that the plaintiff should receive a conveyance for the 98½ acres ; and that *H.,* having received a deed for the whole lot, was bound, in equity, to convey the 98½ acres to the plaintiff.

2. That the defendant, when he took the conveyance from *H.,* was chargeable *with notice of the trust* under which *H.* held the 98½ acres ; and so he took that part of the lot, subject to such trust, and was, therefore, bound in equity to release to the plaintiff.    He cited 1 *Atk.* 384. 2 *Madd. Ch.* 103.

*Henry,* contra, insisted, 1. That the evidence to show a *resulting trust* in the conveyance by the representatives of *Pulteney* to *H.,* was incompetent, as the *agreement* upon which that conveyance was founded was *in writing,* and could not be varied by *parol,* except to show fraud or mistake.    (1 *Johns. Ch. Rep.* 582.    *Roberts on Frauds,* 94. *Sugden's L. of V.* 414, 415.    16 *Johns. Rep.* 199.    1 *Johns. Ch. Rep.* 281. 283. 429.)

2. That the agreement between the plaintiff and *H.,* relative to the 50 acres, being *in writing,* but not produced, nor its loss or destruction shown, all *parol* evidence relative to it was incompetent and inadmissible ; and that proof being excluded, there was no certainty as to the parts of the lot to be conveyed to each, without which there could be no decree.    (1 *Johns. Ch. Rep.* 283, 284.)

3. That the exclusion of the *parol* proof, respecting the *resulting trust,* and the *agreement* between the plaintiff and *H.,* rendered the proof, as to *notice* of the alleged trust to *Benedict,* incompetent.

4. That even if such proof was competent, the *admission* by the plaintiff, that his title had been extinguished, and that *B.* had purchased without fraud, and in ignorance of the agreement or understanding between the plaintiff and *H.*, were sufficient to resist the execution of the alleged trust.

5. That the alleged agreement between the plaintiff and *H.*, was designed to delay, hinder, and defraud the plaintiff's creditors, and, therefore, void.

*May 4th.* The cause stood over for consideration to this day.

The Chancellor. The bill seeks to establish and to have enforced a resulting trust against the defendant, *Benedict*, who, it is alleged, was a purchaser, with notice, from the fraudulent trustee.

[Here his honour stated the substance of the pleadings.]

It is abundantly proved, that the avowed object of the new arrangement, in *December*, 1816, between the plaintiff and *H.*, was to avoid the effect of the Sheriff's sale, in *September*, under *Griffin's* judgment, and, also, the judgment or claim of another creditor. The original contract was destroyed, and the balance was paid up, and a new deed executed to the defendant, *H.*, on the 15th of *February*, 1817, for the whole lot, and the defendant, *H.*, had, previously, on the 18th of *January*, 1817, purchased the right and title of *Hotchkiss*, under the Sheriff's sale. He had thus acquired a complete legal title to the whole lot, and, instead of conveying the 50 acres to the plaintiff, he, on the 25th of *September*, 1817, conveyed the whole lot to the defendant, *Benedict*. It seems to be sufficiently proved, that the defendant, *B.*, purchased with a knowledge of the claim of the plaintiff; yet several witnesses testify to repeated subsequent declarations of the plaintiff, that he did not believe the defendant, *B.*, had any such knowledge when he purchased.

If the defendant, *B.*, is to be charged, as I rather think he ought to be, with notice of the plaintiff's claim, yet there are two or three objections to the relief sought by the plaintiff.

1. It is proved, by *Samuel B. Bradley*, a witness produced and examined on the part of the plaintiff, that articles of agreement between the plaintiff and the defendant, *H.*, were drawn by him, the witness, and executed by those parties, on or about the 21st of *November*, 1816, containing the terms of the sale of the 50 acres.   That agreement is not produced, and it is not shown to have been lost or destroyed, and it completely shuts out all the parol proof, relative to that agreement.   The bill itself seems to refer to this very agreement, for it states, that on or about the 22d of *November*, 1816, the plaintiff executed to the defendant, *H.*, an agreement, in writing, embracing the terms of the contract to sell 50 acres.   So, also, the new contract, of the last of *December* or first of *January*, between the agent of the *Pulteney* estate, and the defendant, *H.*, made at the request of the plaintiff, was in writing, and it is not produced, and that writing contained the substituted arrangement of the parties.   There can be no resulting trust when the deed or conveyance is in pursuance of a written agreement.   " Where the relative rights or obligations of the parties," says *Roberts*, (*Treat. on Frauds*, p. 94.) " are stipulated and adjusted by written instruments, the instruments must still speak for themselves, by expression or implication, and no extrinsic collateral evidence ought to be received, to ingraft other or additional trusts upon the deed, by proof of intention, unless upon a ground of fraud."

There is no allegation in this case of any misrepresentation, fraud, or mistake, in the contracts in writing, made between the plaintiff and the defendant, *H.*, and, afterwards, between the *Pulteney* office, at the instance of the plaintiff, and the defendant, *H.*   And yet the plaintiff seeks,

by parol proof, to establish a resulting trust, in the convey-
ance from the *Pulteney* agent to the defendant, *H.*, in *Fe-
bruary*, 1817, though that conveyance was in conformity
to the previous agreement, in writing, made under the di-
rection of the plaintiff. The parol proof, in such a case,
is inadmissible ; and if that be excluded, the whole founda-
tion of the bill fails.

2. The plaintiff has no equity growing out of the entire
circumstances of the case, to entitle him to the aid of this
Court, in enforcing a specific performance of a parol agree-
ment, (admitting the evidence of it to be admissible,) to
convey to him part of the lot. All the cases agree, that
a bill for a specific performance of an agreement, is an
application to the sound judicial discretion, or extraordi-
nary jurisdiction of the Court, which is not to be exercised
where the plaintiff has so conducted himself as to destroy
all claim to its interposition. In the exercise of that
discretion, the Court will consider the circumstances
under which the agreement was obtained. In this case,
the agreement itself, between the plaintiff and *H.*, that
the contract with *Thayer* should be destroyed, and a
new contract made directly with *H.*, was made on purpose
to shut out the right of an intervening purchaser under a
Sheriff's sale. Shall this Court help a party in the
performance of an agreement made on purpose to defraud
creditors ? The plaintiff had entirely lost all his right and
interest in the possession and improvements of the lot, by
the Sheriff's sale. He had an interest in that lot under the
assignment of *Thayer's* contract, which was the subject of
sale on execution. (*Jackson* v. *Scott*, 18 *Johns. Rep.* 94.)
That right had been passed, by the judgment, execution,
and sale at law, to *Hotchkiss*, the purchaser, and the ar-
rangement between the plaintiff and *H.*, was confessedly
made to defraud that purchaser, as well as other creditors ;
and this Court will not interfere to enforce the specific

performance of a contract, iniquitous and fraudulent in its very foundation.

Bill dismissed, without costs.