The opinion of the court, (Huston, J. being absent,) was delivered by
Gibson, J.
The principles which must guide, in motions for new trials, are the same whether the suit be an action strictly at the common law, or substantially a bill in equity. The rules of equity are as well defined and of as easy application by a jury, under the direction of the court,-as-are the rules of the common law. With us, equity and law are convertible terms; and no good reason has been shown for distinguishing between them in the exercise of judicial discretion. On the contrary, the course indicated would lead to the destruction of trial by jury altogether.
Whatever may be our opinion of the points on which the plaintiff mainly relies, there is an insuperable impediment in the way of his recovery. No construction, however liberal, can make him a creditor of the partnership; consequently, his debt is not within either the letter or the spirit of any of the trusts declared in the deed of assignment. On this head, cases in bankruptcy must be viewed with extreme distrust, and adopted, if at. all, with great caution and many grains of allowance.. The English courts have carried their construction of the contract of partnership toa length that would often have produced shocking injustice, had not that been prevented by forced constructions on the other side. Nothing can be more unjust in the abstract, than the right of the partnership creditors to a monopoly of the partnership funds; yet this was produced by holding the interest of each partner to be limited to what remains after the joint debts are paid; arid hence a lien was created in favour of the joint creditors, for no equity peculiar to themselves, but to prevent the separate creditors from coming in to the prejudice of the other partners. To counteract this natural injustice, when both classes came before the chancellor under a commission of bankruptcy, he was compelled to give the separate creditors of the partners the same monopoly of their separate estates; and the interest of the separate creditors was further promoted by throwing on the joint fund all who could by any construction be declared joint creditors: as, therefore, the joint fund is usually the largest, and as those who were admitted to participate in it would make no objection, it is not extraordinary that we should have many cases in which creditors were let in on the joint fund, who had not trusted to it. Under the statutes of bankrupt *126 cy, this was all very well; but here, where we are under no necessity to take a course which would lead into difficulties or to re - sort tp by-ways to extricate ourselves from them, it would show little foresight to follow the English decisions. We ought rather to suffer ourselves to follow the dictates of reason, and common sense, according to which it is impossible to say, that the credit in. this instance was not given exclusively to the partnership. Mr. Markoe had undoubtedly been in treaty with the firm: but the matter was finally arranged by a conveyance to James and John Gibson, and a bond and mortgage from them ás a security for the purchase money. There undoubtedly are cases where a partnership debt will not merge in the bond of one of the partners; but when it does not, it should clearly appear that the credit was originally given to the firm, and that the security afforded by the bond was intended to be cumulative; in the absence of proof of which, the bond must necessarily be considered as the principal, and the only debt. Here, however, the proof accords with the legal presumption; for it distinctly appears, tb-d when Mr. Markoe conveyed the property to the Messrs. Gibson, and took their bond and mortgage for the price, he declared this was done because he thought them sufficient for the debt; thus intimating, that he relied on this security exclusively. After this, it is unnecessary to inquire into the view with, which the property was purchased, or whether it has been applied to the purposes of the partnership. It is sufficient that the credit was given to the Messrs. Gibson; for Mr. Markoe, having thought proper to trust them originally, could never afterwards resort to the firm.
But if the law were otherwise, still the written contract showed any thing but a purchase by the firm; and if a joint liability existed in fact, it could be made only by extrinsic circumstances. Of these the plaintiff has had all the benefit to which he was entitled; but he complains of the direction, that the steam-mill did not pass by the deed of trust. In conveyances of this sort, I admit that words of inheritance are not. indispensible where the purposes of the trust cannot be answered with less than a fee; but by the provisions of the assignment, (particularly the reference to the schedule and books of the partnership,) it is made plain that the parties had in vievv nothing but an assignment of the personal effects, and this construction is fortified by a variety of circumstances too minute to be recapitulated. The other parts of the case were left to-the jury under a direction quite as favourable to the plaintiff as he had a right to expect. The Chief Justice charged, that if the purchase were made by'thejirm, the debt might be considered as still due from the firm, although the Messrs. Gibson had taken the deed to themselves, and given their own bond and mortgage for the price; and, as to this, the plaintiff, of all the parlies concerned, had least reason to complain. As to the supposed mistake of the jury in point of fact, it is sufficient that the judge who tried *127 the cause is not dissatisfied with the verdict, and, on a review of. the evidence, I am inclined to coincide in'opinion with the .jury. On every ground, therefore, the defendants are entitled to judgment.
Rule to show cause discharged.