# Henderson *against* Hays.

An action of ejectment may be obtained by a vendee against a vendor, to enforce the specific performance of the agreement of sale and purchase, wherever a court of chancery would sustain a bill for that purpose.

Whether a specific performance of an agreement for the sale and purchase of land will be enforced by ejectment, depends upon the equity and justice of all the circumstances which surround the case : and a case may occur where the agreement may be perfectly good and binding upon both parties, and the price agreed to be paid by the purchaser fully equal to the value of the property, and not the slightest degree of blame attaching to him, and yet a specific performance will not be enforced.

Hence, in an action of ejectment to enforce a specific performance, it is competent to give evidence that the vendor was intemperate in his habits ; the effect that spirits had upon his intellect ; that he had been wasting and mismanaging his estate, and that the sale of the land was greatly more disadvantageous to him, than any advantage he could derive from the purchase money.

ERROR to the district court of *Lancaster* county.

This was an action of ejectment by Dr William Hays against John Henderson and Thomas Henderson, to enforce the specific execution of an agreement between John Henderson and Dr William Hays, by which the former sold to the latter one acre of ground. During the trial fourteen bills of exception to the rejection of evidence were taken by the defendants, and as many points put to the court upon which to instruct the jury ; all of which resolved themselves into two questions.

1. Whether it was competent to give evidence for the defendant, that he was habitually intemperate, to a degree calculated to

[Henderson v. Hays.]

impair his intellect; that the contract was a very disadvantageous one to him; and such other evidence as would induce the jury to believe that the contract should not be enforced.

2. If such evidence were given, and it appeared that the vendor had a mind capable to contract, and the conduct of the vendee had been fair and honest, yet might the court and jury refuse to enforce a specific performance of the contract?

The court below rejected all the evidence respecting the quality of the vendor's mind, and the effect which spirits had upon it, except at or near the time when the contract was entered into; and were also of opinion, and so instructed the jury, that if they believed the vendor had a mind capable to contract at the time he executed the agreement, that the conduct of the vendee had been fair and honest, and that that no imposition had been practised, the plaintiff was entitled to recover. A verdict and judgment were rendered for the plaintiff.

*Montgomery* and *Hopkins,* for plaintiff in error. A plaintiff in ejectment against a vendor of lands is to be regarded as a complainant in equity who seeks a specific performance of a contract; and if there be circumstances connected with the contract which would lead to the conclusion that injustice would be done to the vendor by compelling him to convey, a jury would not be bound to find for the plaintiff. Campbell *v.* Spencer, 2 *Binn.* 129; Bedford *v.* Shilling, 4 *Serg. & Rawle* 402; *Pow. on Con.* 90; Seymour *v.* Delancy, 6 *Johns. Cha. Rep.* 222; 6 *Peters's Rep.* 264; 1 *Harris & Johns.* 224; 2 *P. Wms* 203; 2 *Chan. Cas.* 103; 2 *Atk. Rep.* 339; 2 *Ves.* 627; 4 *Bro. Par.* 557; 7 *Ibid.* 70; 3 *P. Williams* 129; *New. on Con.* 362; Osgood *v.* Franklin, 2 *Johns. Chan.* 23; Spangler *v.* Hummer, 3 *Penns. Rep.* 370; Jones *v.* Wildes, 8 *Serg. & Rawle* 150; 1 *Mad. Chan.* 321, 336; *Cas. tem. Talb.* 234; Fay *v.* Decamp, 15 *Serg. & Rawle* 230; Peebles *v.* Reading, 8 *Serg. & Rawle* 484; 2 *Ves.* 156.

*Parke* and *Champneys,* for defendant in error. When a contract has been fairly entered into by two parties who have capacity to contract, every dictate of justice, and every consideration which makes the administration of the law useful, leads to the conclusion that it should be enforced. No circumstance which affects the interests of one of the parties, should be permitted to take away rights which are vested in the other by a solemn contract. Cited, 2 *Pow. on Con.* 1, 2, 151; 1 *Fonb. Eq.* 30, 116; *New. on Con.* 357; 1 *Pow. on Con.* 29; 3 *Cowen* 518; 1 *Madd. Chan.* 286; 1 *Day* 167; 15 *Mass.* 58; 7 *Serg. & Rawle* 90; 8 *Serg. & Rawle* 573; 9 *Mass.* 225; 10 *Serg. & Rawle* 84; 6 *Mass.* 239.

The opinion of the Court was delivered by

Kennedy, J.—This was an action of ejectment brought in the district court of Lancaster county, by the defendant in error against

the plaintiffs in error, to recover the possession of an acre of land, which John Henderson, one of the plaintiffs in error, had previously, by an article of agreement entered into with the defendant in error, agreed to sell and convey to him in fee simple, in consideration of 80 dollars; 40.dollars of which were paid at the time of executing the article of agreement, and the remaining 40 dollars tendered before commencing the action, which Henderson refused to receive, and at the same tendered in return to Hays the 40 dollars received of him.     The acre of land which was the subject of the agreement, was part of a farm containing about forty-five acres, which John Henderson, the seller, had owned and resided on many years, being his patrimonial estate.     The acre was laid off in the form of a parallelogram, extending along and fronting on the old Pennsylvania road leading from Lancaster to Philadelphia about twenty-five and a half perches, and running back from the road about six perches and two-tenths of a perch into the farm.

For want of a court of chancery in this state, the action of ejectment has been resorted to, and may doubtless be maintained by the vendee against the vendor, to enforce the specific performance of the article of agreement entered into between them, wherever a court of equity would sustain a bill for that purpose.     Hawn *v.* Norris, 4 *Binn.* 77 ; Vincent *v.* Huff, 4 *Serg. & Rawle* 301 ; Stein *v.* North, 3 *Yeates* 324 ; Griffeth *v.* Cochrane, 5 *Binn.* 105.     The party, to entitle himself to a conveyance, must do every thing necessary to be done, in order to obtain a decree for a specific performance.     Griffeth *v.* Cochrane, 5 *Binn.* 105 ; Marlin *v.* Willinck, 7 *Serg. & Rawle* 298. In such cases it has ever been the settled practice of the courts to proceed upon equity principles ; Ebert *v.* Wood ; 1 *Binn.* 217; and to prevent a failure of justice, chancery rules have been adopted.     Dornow *v.* Kelly, 1 *Dall.* 144 ; Stansberry *v.* Marks, 4 *Dall.* 130 ; Murray *v.* Williamson, 3 *Binn.* 135 ; Pallond *v.* Shaffer, 1 *Dall.* 214 ; Jordon *v.* Cooper, 3 *Serg. & Rawle* 578.     But having no court of chancery, this authority can only be exercised through the intervention of a jury.     Minsker *v.* Morrison, 2 *Yeates* 346.     Hence it follows that whatever would be proper for a chancellor to hear upon investigation of those cases to which chancery rules are applicable, must be equally so for the jury, who are to ascertain the facts and apply the equitable principles under the direction of the court.     Peebles *v.* Reading, 8 *Serg. & Rawle* 484 ; Kuhn *v.* Nixon, 15 *Serg. & Rawle* 118.

As the errors assigned in this case are either bills of exceptions to the opinion of his honour, the judge below, in rejecting evidence offered to be given to the jury by the plaintiffs in error; or to his opinion on certain points submitted by the parties respectively for his direction to the jury, as to the legal and equitable principles which ought to be applied by them upon their ascertainment of the facts, and in giving their verdict: it may be proper to inquire what are the rules and principles which have governed courts of equity in

[Henderson v. Hays.]

decreeing or refusing to decree a specific performance of contracts and in admitting evidence in such cases.

It has been argued, in this case, by the counsel for the defendant in error, that it is as much of course in a court of equity to decree a specific performance, as it is to give damages at law; and that wherever the party is entitled to recover damages at law, he is en- titled to a specific performance in a court of equity. For this no direct authority has been adduced; and I am not aware of any, unless possibly an inference that such had been the rule before Lord Somers's time, might be drawn from what Sir Thomas Clarke, master of the rolls, is reported to have said in Dodsley *v.* Kinnersley, *Amb.* 406, when speaking of the former method of proceeding in chancery, by a patentee of a literary work to restrain the defendant from republishing it. He says, " the old practice was like the case of agreements before Lord Somers's time; the party was sent to law, and if he recovered *any thing* by way of damages, this court entertained the suit." But even this implies that such was not the practice at that time. The court then, as well as long before and ever since, has certainly acted upon the principle of exercising its discretion in either lending or withholding its aid to enforce agreements, not arbitrarily or capriciously, but as the merits of each particular case seemed to demand, upon a sound, discreet and temperate consideration of all the circumstances attending it. Goring *v.* Nash, 3 *Atk.* 188; Perkins *v.* Wright, 3 *Har. & M'Hen.* 326; Simmons *v.* Hill, 4 *Har. & M'Hen.* 258; St John *v.* Benedict, 6 *Johns. Ch. Rep.* 111; Seymour *v.* Delancy, *Ibid.* 222; S. C. 3 *Cowen's Rep.* 445, 505; 4 *Burr.* 2539; 7 *Ves.* 35; Buckle *v.* Mitchell, 10 *Ves.* 111; Flint *v.* Brandon, 8 *Ves.* 165. And this appears to be in perfect accordance with the principles of natural justice and equity; for to say that because damages are recoverable at law, a court of equity must therefore decree a specific performance, may be to do great injustice and injury to the defendant in a case where a jury, at most, would only give nominal damages against him. See Pope *v.* Harris, *Lofft* 791. In cases of inadvertency and surprise, not amounting to fraud, the plaintiff will be left to his remedy at law. Twinning *v.* Morrice, 2 *Bro.* 331; Mortlack *v.* Buller, 10 *Ves.* 308. So in a case where a man was entitled to a small estate under his father's will, given on condition that if he sold it within twenty-five years, half the purchase money should go to his brother; he agreed in writing to sell it, and afterwards refused to carry it into execution, pretending that he was intoxicated at the time with liquor; upon a bill brought to compel it, Lord Hardwicke said that without the other circumstance, the hardship alone of losing half the purchase money, if carried into execution, was sufficient to determine the discretion of the court not to interfere, but leave them to law. Fain *v.* Brown, cited in Hylton *v.* Biscoe, 2 *Ves.* 307. Hence it appears that a court of equity will refuse to decree a specific performance in cases where the agreement may be perfectly good and binding upon both parties, and the

[Henderson v. Hays.]

price agreed to be paid by the purchaser equal to the value of the property, without the slightest degree of blame attaching to him. So, if trustees for sale, or those acting by their authority, fail in reasonable diligence; if they contract under circumstances of haste and improvidence; if they make the sale with a view to advance the particular purpose of one party interested in the execution of the trust, at the expense of another party: a court of equity will not enforce a specific execution of the contract, however fair and reasonable the conduct of the purchaser may have been. Ord *v.* Noel, 5 *Madd.* 441. Again, where poor uneducated parties are induced, by a person who gets hold of them in the absence of their professional adviser, to make an *improvident* bargain; no assistance will be given by a court of equity towards compelling its execution. Martin *v.* Mitchell, 2 *Jac. & Walk.* 423; Kenneys *v.* Hansard, *Coop.* 129. And in the case of an illiterate person, addicted to intoxication, whose course of life renders him extremely subject to imposition; such habits, though not carried to an excess constituting absolute incapacity, lay a *ground for strict examination*, whether any instrument excuted by him does not, in itself, contain evidence that advantage was taken of those habits. Say *v.* Barwick, 1 *Ves. & Bea.* 199; Cook *v.* Clayworth, 18 *Ves.* 16; Dunnage *v.* White, 1 *Swanst.* 150; Mountain *v.* Bennet, 1 *Cox* 353. Inadequacy of price, though not so gross as to amount to fraud, and therefore no ground for setting the contract of sale aside, may be sufficient for refusing to enforce a specific performance of it. Osgood *v.* Franklin, 2 *Johns. Cha. Rep.* 23; S. C. on appeal, 14 *Johns. Rep.* 527. So if the situation of the parties be so unequal as to give one an opportunity of making his own terms; in which case a court of equity would not be disposed to lend its assistance towards carrying the contract into execution, but would leave the plaintiff to his remedy at law, without thinking it necessary to go very *accurately* into the doctrine as to *inadequacy* of valuation. Lowther *v.* Lowther, 13 *Ves.* 103. But where the contract has been made by a competent party, and is in its *nature* and *circumstances unobjectionable*, it is no doubt as much a matter of course to decree a specific performance as it is to give damages at law. Hall *v.* Warner, 9 *Ves.* 608; Seymour *v.* Delancy, 3 *Cowen* 445, 505. And in particular cases a court of equity will go further, and decree a specific performance where no damages can be recovered at law. Acton *v.* Acton, *Pre. in Cha.* 237; S. C. 2 *Vern.* 480; Connel *v.* Buckle, 2 *P. Wms* 244; Gregory *v.* Williams, 3 *Meriv.* 590.

In the case of Campbell *v.* Spencer, 2 *Binn.* 129, it was held by this court, that the plaintiff, in an action of ejectment brought by the vendee against the vendor of lands, stands in the situation of a person applying to a court of equity for a decree to compel a specific performance of the contract. And the court in that case sustained the verdict of the jury in favour of the defendant, upon the very ground of the circumstances being such as to induce a suspicion that the defendant, under the influence of drinking *bitters*, while making this

[Henderson v. Hays.]

contract at a tavern with the plaintiff, who had sent for him to come thither, although not drunk, had unadvisedly sold his farm, upon which he had resided many years, for store goods.   The late Chief Justice, in delivering his opinion upon the motion for a new trial, says in page 133, "it is said by the plaintiff's counsel, that they (meaning the jury) undertook to pronounce the contract as altogether void.   If that was ascertained on the record, and the case could be reduced to that point, I should have no hesitation in saying there should be a new trial."   And near the commencement of his opinion, on the same page, he says, " I agree with Judge Yeates, before whom the cause was tried, that there is nothing in the evidence reported by him, which would authorize the court to say that the contract was void.   The plaintiff might undoubtedly support an action for damages for breach of the agreement.   But a contract *may be binding at law,* and yet a *court of equity may not think it reasonable* to decree a specific performance."   Upon this ground it was, that the court supported the verdict of the jury in that case, and *rendered a judgment upon it in favour of the defendant.*   It is clearly the same doctrine which is to be found in the decisions of the court of chancery in England, anterior to our revolution.   In Bromley *v.* Fetteplace, *Freem. Chan. Rep.* 245, it is laid down in these words :   "this court will not execute all agreements *in specie,* but will consider upon *circumstances relating to the agreement,* the *reasonableness* and *equitableness* of executing the same ; and will, in many cases, leave the party to his remedy at law, to recover damages only for not performing the agreement."   So in Jones *v.* Statham, 3 *Atk.* 389, lord Hardwicke says, " the constant doctrine of this court is, that it is in their discretion, whether in such a bill, they will decree a specific performance, or leave the party to his remedy at law." And again in Barnadiston *v.* Lingood, he repeats, " in the case of a *hard bargain,* where it is not absolutely executed, but executory only, the *constant rule* of the court is, not to carry it into execution." 2 *Atk.* 134.   And as late as Mason *v.* Armitage, 13 *Ves.* 25, it is laid down to be discretionary with the court, either to decree or to refuse a specific execution of the contract, according to the particular circumstances of the case.   And wherever there is any sort of suspicion, that makes it not fair to call for an execution of an agreement, a court of equity will not give the *extraordinary* relief of a *specific performance,* but leave the purchaser to his action at common law.   Mortlock *v.* Buller, 10 *Ves.* 305.

Chancery having unquestionable jurisdiction of fraud, will, wherever a contract is shown to have been obtained by means of it, or to be tainted by it, still go further, and as against the party guilty of of the fraud, will not only refuse to decree a specific performance of the contract, but at the instance of the innocent party will set it aside altogether.   And although fraud assumes such a variety of forms that it may be next to impossible to reduce it to any regular classification, yet it must be acknowledged that the effort made to-

II.—U

[Henderson v. Hays.]

wards it by Lord Hardwicke, that great master of chancery principles, in Jansen v. Chesterfield, 2 *Ves.* 155, 156, is well calculated to aid our investigation on the subject as it relates to contracts.    The third species of which seems to be peculiarly the object of notice in a court of equity; and may perhaps be considered the connecting link in the chain between those cases attended with such circumstances as will barely induce a court of equity to refuse its aid in decreeing a specific performance; and cases where direct proof of fraud is made, and may demand the attention of a court of law as well as of equity.    "It may," he says, "be presumed from the circumstances and condition of the parties contracting, and this goes further than the rule of law; which is, that it must be proved, not presumed; but it is *wisely*-established in *this court*, to prevent taking *surreptitious* advantage of the *weakness* or *necessity* of another, which knowingly to do is equally against conscience as to take advantage of his ignorance; a person is equally unable to judge for himself in one or the other." It has been thought by some that this doctrine is scarcely reconcilable with the principles laid down in the cases of Townsend v. Lowfield, 1 *Ves.* 35; S. C., 3 *Atk.* 536; and Trenchard v. Wanley, 2 *P. Wms* 166.    But Mr *Hovenden*, in his *Treatise on Frauds*, has, I think, shown that it is perfectly consistent with what is said there, when properly understood, as it must be, with a reference to the nature of the prayer contained in the bills and the subject matter of them.

From the view which has been presented of the authorities, showing the principles and reasons upon which courts of equity have refused to interpose their aid in decreeing specific performance of contracts, it is obvious that the circumstances from which they may be inferred are as multifarious as the transactions of human life, and that it would be difficult, if not impossible, to lay down any fixed rule by which to test the admissibility or inadmissibility of them in evidence.    This would seem to depend upon their tendency to establish whatever has been deemed proper for the consideration of a court of equity in deciding whether it will decree a specific performance of the contract or not.    Lee, C. J., in the case of Jansen v. Chesterfield, 2 *Ves.* 151, observes, "it is difficult to form any general rule that can meet every case of this kind that may happen, but they must in general be governed by the circumstances in each case."

And as regards the rule of evidence adopted by chancery in such cases, Lord Hardwicke, in Lewellen v. Mackworth, 2 *Atk.* 40, has laid it down, that "there is no rule of evidence to be laid down in that court but a reasonable one; such as the nature of the thing that is to be proved will admit of."

Now as to the evidence offered by the plaintiffs in error in this case, and rejected by the court below, it appears to me that there was nothing in its nature which ought to have prevented its being received, because it was not only such evidence as the facts and cir-

[Henderson v. Hays.]

cumstances proposed to be proved admitted of, but the very best that could be given of them. And with respect to the relevancy of the facts and circumstances themselves so offered to be proved, and the bearing which they might have had upon the minds of the jury in deciding the case according to the principles already laid down which seem to have governed courts of equity in determining upon questions of specific performance, I am inclined to think that they are such as ought to have been submitted to the jury, with the exception of the matters contained in the fifth, eighth. and thirteenth bills of exception. It is proper however to state that I think the same questions might have been propounded in an unexceptionable form by having added a request of each witness to mention also his reasons for the opinion which he might give in answer to the question. Then the jury would have been enabled to judge for themselves of the weight that was due to the opinion of the witness; but unaccompanied by his reasons, I think it would have been entitled to no weight, and was therefore properly rejected.

It is sufficient to say, that all the matters contained in the first, second, third, fourth, sixth, ninth and fourteenth bills of exception, and rejected by the court, ought to have been received in evidence, inasmuch as they all went to show the intemperate course of life and habits which John Henderson had led and fallen into—the effect of liquor upon him when taken in certain quantities, in destroying his senses and depriving him of his reason, down even to a few hours before the time of making the contract. That by these means he had been wasting his estate ; impairing his mind as well as his capacity for managing it and transacting his business ; creating wants for money that were pressing upon him to a degree perhaps that he might think intolerable. All these things, as it appears to me, were proper to be submitted to the jury along with the other circumstances, that they might consider and determine whether, under the impaired and disordered state of his mind and of his affairs, he had not been induced or impelled to enter into a very improvident contract ; and whether it was not such, if carried into specific execution, as would greatly deteriorate the value of the residue of the farm.

As to the matter contained in the seventh bill of exception, it was only asking a more full explanation from the witness of a thing which the plaintiff below had drawn from him by his cross-examination, to which he had not been examined at all in chief. This the plaintiffs in error had a right to claim upon common principles of justice, if it were a matter from which the defendant in error supposed he could derive any advantage before the jury ; and, that his counsel thought he could, is shown to demonstration, by their requiring the court, in the fourth point which they submitted, to charge the jury that the purchase of the farm by Thomas G. Henderson of John Henderson, was high evidence of an admission by the former that the latter was competent to make a contract at that time.

The question proposed in the tenth bill of exception was not improper, because it in some degree might have satisfied the jury that the plaintiff below had been seeking to purchase other property in the immediate vicinity, similarly situated to that in question for which he afterwards contracted with John Henderson, and that he had thereby made himself acquainted with the value or estimate put on such property by other owners who were capable of taking care of it; and as the prices asked by them were greatly above what he agreed to give for that in question, in case that had been made to appear to the jury to be greatly under the value of the property, it would have been evidence to show that he must have been conscious that it was so at the time he agreed to buy; but of itself perhaps would have weighed nothing; taken, however, in connexion with the other circumstances proposed to be proved, might have been entitled to consideration, and produced an effect favourable to the plaintiffs in error.

The deed of conveyance from John Henderson to Thomas G. Henderson, which is the subject of the eleventh bill of exception, was clearly evidence to show the nature of the right or title under which Thomas G. Henderson, one of the plaintiffs in error claimed to hold the land in dispute. Whether it would have been sufficient for that purpose, was a question which remained to be decided by the jury upon a full hearing of all the other evidence, under a proper direction from the court, as to the legal and equitable principles involved in the case.

The evidence offered in the twelfth bill of exception, which is the only remaining one to be noticed, was admissible to show that the witness had expressed upon a former occasion a sentiment seemingly less favourable to the competency of John Henderson to manage his business, than what he had then testified to. And if he had expressed himself as the question offered to be put to him by the counsel for the plaintiffs in error seemed to indicate, it was perfectly right to have an explanation of it, as it might affect his credit.

I come now to notice the exceptions taken to the answers of the judge, on the points submitted to him, both by the plaintiff and the defendants below. And it seems to me, that in answering the three first points of the plaintiff below, he lost sight of the distinction which has been shown to exist, and to have been recognized in courts of equity, between what is necessary to be shown in order to avoid a contract, and what may be sufficient ground for refusing to decree a specific performance of it. We have seen, that notwithstanding it may be good and valid, and such as the party at law may be entitled to recover damages on for a breach of it, yet a court of equity has refused to decree a specific performance of it: as where the party from the pressure of his wants, or in a thoughtless moment, was induced to sell an estate which he held under a will that compelled him, if he sold it within twenty-five years, to pay one half of the price to his brother, although the price for which he agreed to sell was fully

[Henderson v. Hays.]

equal to the value of the estate, and the conduct of the party agreeing to buy, perfectly fair. And still less would a court of equity be disposed to interpose its aid in decreeing a specific performance, if it should appear that the plaintiff in obtaining the contract had not dealt honourably and conscientiously with the defendant. So where the defendant happens to be a man of weak mind, or has rendered himself by his intemperate habits incapable of managing his business and his estate in a provident manner, and if inadequacy of price should be shown, it ought to excite a jealousy that would induce a strict examination, in order to be satisfied that every thing was fair in obtaining the contract. And if in addition to inadequacy of price, it should also appear that the defendant was hurried into the contract, without having time sufficient allowed him to reflect on what he was *doing, or to consult with his* friends about it, where it was a matter of any magnitude ; or even where the price agreed to be given to such person might be fully equal in value to that part of the estate agreed to be sold when separated and detached from the rest of it, but such separation would injure and deteriorate the value of the residue greatly beyond the value of the price that was to be received for it : a specific performance ought not to be enforced. In short, if the conduct of the party seeking a specific performance of a contract be not perfectly conscientious, honourable and fair ; or if the contract itself be such that a specific execution thereof would necessarily in its consequences to the defendant produce a loss or injury greatly above the value of the price to be received by him under the contract, and which could not readily have been foreseen, unless by a man perfectly competent to the management of all his concerns, possessing at the time an unclouded mind, free from embarrassment, and capable of deliberating and reflecting maturely on what he was about to do : a specific performance, according to the established principles of equity, ought not to be enforced. But the judge before whom this cause was tried, in answer to the defendant in error's points, told the jury in substance, " that he was entitled to recover the land" (which was in effect to have a specific execution of the contract), "unless they" (the jury) "should be of opinion that John Henderson was *incapable* of entering into *any contract* at the time the articles of agreement were entered into ; or should believe from the evidence, that there were dishonest practices and fraudulent contrivance on the part of the plaintiff (below) in obtaining the contract." Thus putting the case to the jury exclusively upon the grounds of incompetency in John Henderson to make a contract, or fraud practised by the plaintiff below upon him. Doubtless, either of those grounds would have been even more than sufficient for refusing the plaintiff below a specific performance of the contract. They would have been good cause for setting it aside altogether ; but the judge erred in instructing the jury as if incompetency or fraud were the only grounds upon which they ought to find a verdict against the plaintiff below.

The judge has also committed the same error in answering the

[Henderson v. Hays.]

fifth and seventh points of the defendants below in their first series. And again, in answer to the second case stated by the plaintiffs in error under their third point in the second series of points, the judge has erred in charging the jury, " that the contract ought not to be enforced if they should believe there were any unfair contrivance and practices by the plaintiff (below) in procuring the article to be drawn and executed by the defendant in the manner therein stated." Thus leaving the jury to infer, that if there were no unfair contrivance and practices by the plaintiff below in procuring the agreement, that the specific execution of it ought to be enforced. To say the least of this, the judge was not sufficiently explicit ; for we have seen, and referred to cases on this subject which prove incontestably, that unreasonable bargains, the specific execution of which would be greatly injurious to the defendants, will not be decreed to be specifically performed by courts of equity, although no unfair contrivance and practices were imputed to the plaintiffs.

The answers of the judge to some other of the points submitted by the defendants below, have been complained of as erroneous ; but it is sufficient to say, that this does not appear with sufficient clearness and distinctness to be the case. Many of these points have a reference only to detached parts of the evidence and circumstances of the case, and the judge is required therefrom to charge the jury in their favour upon the whole case. Now this often is not dealing fairly with the court, and most generally is unnecessarily perplexing ; and what is still worse, when done by counsel, it may be doing injustice to their clients, though not designedly ; because it may be that the court cannot, on a partial view, or with a reference to some of the circumstances only of the case, charge the jury in favour of their clients, when under a full view, and with a reference to all the circumstances of it, it would be right to do so. Multiplying points to the court, and trying to split hairs, as is too often the case, seldom or never sheds light upon the cause, but most generally perplexes and bewilders the jury, and occasionally the court too ; and as I doubt much whether such a course be calculated to raise the character of the profession, I think gentlemen of the bar need not be very emulative to excel in it.

Judgment reversed, and a *venire facias de novo* awarded.