# Rennyson *versus* Rozell.

106 407
152 533
106 407
31 SC ² 93

1. In Pennsylvania the action of ejectment by a vendee against his vendor, under articles of sale, is the equivalent of a bill in equity for specific performance, and relief is therefore not of absolute right, but rests in the equitable discretion of the court.

2. In actions for specific performance of a contract of sale of land, the legal obligations arising from it will not be enforced if injustice would result from a decree, whether the contract be originally inequitable, or rendered such by subsequent events. In such cases the parties will be remitted to their remedy in an action at law for damages.

3. A vendee cannot enforce the specific performance of a contract for the sale of land if he has been guilty of laches or of conduct calculated to induce the other party to suppose that he had abandoned the contract.

4. A. contracted by written agreement to sell a tract of land to B. A. being unable to make a clear title the deed was not executed at the time specified. Some three years elapsed, and other circumstances concurred from which A. might reasonably have concluded that B. had abandoned his purchase. Subsequently, after A. had begun to build a house on the land, which considerably increased its value, C., an assignee of B.'s title, who bought with full knowledge of all the circumstances, brought an ejectment to enforce the articles of sale.
  *Held*, under the circumstances that C. was not entitled to recover.

April 21, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Montgomery county :* Of January Term, 1884, No. 69.

Ejectment, by William Rennyson, assignee of Cebert H. Newhall against Isaac Rozell, for a messuage and lot of ground on Fourth Street, in Bridgeport, Montgomery county.

On the trial, before WATSON, P. J., the plaintiff proved that on December 18, 1872, Isaac Rozell being seised of the premises described in the writ agreed to sell the same to Cebert H. Newhall for the sum of $600, ten dollars of which to be paid on execution of the articles of sale, and the balance on the delivery to Newhall of a full and satisfactory conveyance of the premises on or before January 20, 1873, Newhall agreeing to purchase the property, to pay the agreed price in the way and manner and at the time set forth. Ten dollars, the stipulated earnest money, was paid at the time of the execution of the agreement. On September 25, 1875, Rennyson, who owned the adjoining property, purchased Newhall's interest in the contract of sale, notified Rozell thereof, and shortly afterwards tendered him the balance of the purchase money, and demanded a deed, which Rozell refused to execute; whereupon this suit was brought November 26, 1875.

[Rennyson *v.* Rozell.]

Upon cross-examination the plaintiff testified: "I purchased the agreement of sale because it had value; I did not make any inquiry of Mr. Rozell of any reason why this article of agreement had been allowed to go on from 1872 until 1875; Mr. Rozell and I were not on good terms at that particular time; I did not have any more conversation with him than was absolutely necessary; I was negotiating with Mr. Rozell for the purchase of this lot prior to my purchasing this article of agreement; I made a bargain four times with Mr. Rozell for the identical lot; at one time I made a bargain for $300, at another time for $400, at another time $500, and then he wanted $600, and I did not know where he was going to, and I stopped; I don't remember the date of my first agreement with Rozell, nor of my last agreement with him; the latter was prior to this agreement; it was prior to my purchase of this agreement; I think it was on the 18th of December, 1872; I am not sure about that; I supposed I had purchased the property; the agreement was not in writing; I agreed with him as to the amount of money he should get for this property, first $300 if my recollection serves me right, when he insisted on $400 after we had agreed for $300, then $400, then $500, then $600, but just about the dates I don't remember; after these various agreements failed I purchased this paper from Newhall; the various agreements that we endeavored to make were never carried out; I did not consider that my agreement with Mr. Rozell amounted to anything at all; this agreement of Newhall's came in opportunely as I thought, and I purchased it because I considered I was getting a valid, subsisting interest in that property; I don't think I ever knew there was an existing agreement between Newhall and Rozell until the morning of my purchase of Newhall; I don't recollect ever hearing about it; my recollection is very clear, and I can be very positive on that point; I don't remember anything of that sort ever taking place in my mind; I brought a suit in equity against Mr. Rozell for obstructing my window-lights; I don't remember the date; I had purchased this article of agreement prior to that; in that bill in equity I don't remember whether I alleged Newhall's ownership or my own in this property; when I purchased of Wilcox I assumed the payment of the mortgage that I spoke of, and I several times offered to pay it off before the purchase of the article of agreement; the mortgagee did not want the money; I had assumed the payment of the whole mortgage; it was part of the purchase money of the lot which I had already bought; when I purchased this article of agreement digging had been commenced on this lot, but there was very little done; when this suit was brought November 26, 1875, there was a small back

building, I don't think the foundations were in; the super-structure was not up; that was in October; on the 26th of November, the day I issued this summons in ejectment, I don't remember whether the house was up and roofed in; I don't think the walls were pretty well up when I purchased this article of agreement; I live right next door; I have no recol-lection that on the morning when Mr. Rozell began to dig the cellar, that he said to me, 'Now, then, Rennyson, you have this chance to buy this property, and if you do not buy I am going to build.' My recollection is that on the same day he started in with his building, and when I saw he had made a start I gave him notice that I would contest his right to do certain things he proposed to do; after he had dug down a few feet he said the foundations under my kitchen were not very good, and if I would allow him he would make it part of his own; I distinctly warned him not to touch it nor to inter-fere in any way with any portion of my property; I am not sure that this was all before the purchase of the article of agreement; I think this occurred about the same time; it was not for the building of this house that I brought my bill in equity, but for the closing up of my window; the house was built up against mine; it was not built at that time; it was built during the pendency of my suit."

Newhall testified that up to the time of his assignment to Rennyson of the articles of sale he was at all times ready to comply with its terms, but that Rozell was not able to make a clear title to the premises on account of the premises being incumbered by a mortgage which covered also the adjoining lot owned by Rennyson.

Rozell, called as a witness in his own behalf, testified that before the time specified in the article of sale for the convey-ance Newhall had told him that, having purchased another property, he did not intend to comply with the agreement of sale, and that he had thereupon offered the premises in ques-tion for sale to other parties, amongst whom was Rennyson. In September, 1875, he began to build on the premises, and had the house under roof when he first received notice of the assignment by Newhall to Rennyson. Other facts are stated in the opinion of this court.

The plaintiff requested the court, inter alia, to charge as follows: That if the jury believes the evidence of the plaintiff and his witnesses, the verdict must be for the plaintiff for the premises described in the writ. Refused.

The court instructed the jury to find for the defendant. Verdict and judgment accordingly for defendant. Whereupon the plaintiff took this writ of error, assigning for error the above instruction of the court.

*Charles Hunsicker* and *George N. Corson*, for the plaintiff in error.—While it is true that specific performance is of grace and not of right, the discretion of the Chancellor is not arbitrary, but regulated by well known principles of equity: Plummer *v.* Keppler, 26 N. J. Eq., 481; McWhorter *v.* McMahan, 10 Paige, 386; Pulliam *v.* Owen, 25 Ala., 493; Ash *v.* Daggy, 6 Ind., 259; Eastern Counties R. R. *v.* Hawkes, 5 H. L., 359. Mere failure to pay on the day is not a waiver or abandonment of the contract: Mervin *v.* McFadden, 2 Watts, 132. The delay here was justifiable because the title was defective: Wallace *v.* McLaughlin, 57 Ill., 53; Potter *v.* Tuttle, 22 Conn., 512; Ridgway *v.* Wharton, 6 H. L., 292; Vernon *v.* Stephens, 2 P. Wms., 66. The covenants being mutual the vendor cannot put the vendee in default except by tendering performance on his part: Waters *v.* Trair, 9 Johns., 466; Leaird *v.* Smith, 44 N. Y., 618. It is for the jury to say whether the delay is an abandonment: Colt *v.* Selden, 5 Watts, 525; Remington *v.* Irwin, 2 Harris, 143; Craig *v.* Martin, 3 J. J. Marshall, 53. The defendant acquiesced in the delay: Tiernan *v.* Roland, 15 Pa. St., 439; Smith *v.* Webster, 2 Watts, 486; Hall *v.* Holmes, 4 Pa. St., 251. Time was not of the essence of the contract: Morgan *v.* Scott, 26 Pa. St., 51; De Camp *v.* Feay, 5 S. & R., 323; Dixon *v.* Oliver, 5 Watts, 509; Youst *v.* Martin, 3 S. & R., 423; Harris *v.* Bell, 10 S. & R., 39; McLaughlin *v.* Shields, 12 Pa. St., 283. The case should have been submitted to the jury: Piersol *v.* Neill, 63 Pa. St., 420; Colt *v.* Selden, 5 Watts, 525; Church *v.* Ruland, 14 P. F. S., 441.

*N. H. Larzelere*, for defendant in error.—The plaintiff in an action for specific performance can only recover by presenting a case which in equity and conscience entitles him to the intervention of a chancellor: Piersol *v.* Neill, 63 Pa. St., 426; Henderson *v.* Hays, 2 Watts, 151. The plaintiff must have shown himself "ready, desirous, prompt and eager" to fulfill the contract: Miller *v.* Henlan, 1 P. F. S., 268; Boyce *v.* McCulloh, 3 W. & S., 429.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

On the 18th day of December, 1872, Isaac Rozell, by agreement in writing, sold and agreed to convey a lot of ground, in Bridgeport, Montgomery county, to Cebert H. Newhall; the consideration, expressed in the agreement, was $600, of which $10 was paid in hand, the balance was payable upon delivery of "a full and satisfactory conveyance," on or before the 20th January, 1873. No further payment

was, at any time, made upon the purchase money, and the deed was never delivered. In the latter part of September, 1875, Newhall transferred the agreement to William Rennyson, by whom this action of ejectment is brought. The premises were, at the date of the agreement, subject to the lien of a mortgage of $1.000, which bound also the adjoining lot of William Rennyson; this mortgage Rennyson had assumed and was bound to pay; whether or not the existence of this lien was known, at the time of the contract, is a matter disputed; George W. Thomas, a conveyancer, "was acting for both parties," and "was to write the deed." Newhall testifies, that he had no knowledge of the lien at the time, but that Thomas told him of it afterwards. He further says: "I was ready at all times, from the signing of the agreement, until I sold it to Mr. Rennyson, to comply with my part of this contract. I did not in any way surrender or cancel it."

We are of opinion, however, that whilst the agreement may not have been formally surrendered or cancelled, Mr. Rozell had very good reason to regard it as abandoned. The conduct of Mr. Newhall was certainly well calculated to create the belief, in the mind of Mr. Rozell, that he was unwilling to take the property, and had altogether abandoned the contract.

"Rozell," says he, "could not tender me a deed, with a clear title, and I could not take it unless he did give me a clear title, that is the reason I did not pay the $590, on the 20th January, 1873, according to agreement." . . . . . "I think, I said something to George Thomas, in regard to a clear title; I would take it if he would give me a clear title. I do not know that I told him to tell Mr. Rozell that I told Mr. Thomas that."

Mr. Thomas testifies, that Newhall never authorized him to tell Rozell that he would not take the property, but that he may have told Rozell that Mr. Newhall would not take it on account of the mortgage.

Rozell remained in the exclusive possession of the lot, from the date of the agreement; he exercised the usual acts of ownership, offered the property for sale to Mr. Rennyson and others; for almost three years all claim on the part of Newhall would appear to have been abandoned, no act was done, nor word spoken during that period, from which even an inference of claim might be drawn. In the fall of 1875, Rozell began the construction of a building upon the lot, the walls of which threatened an obstruction to the light in Rennyson's residence on the adjoining property; a controversy arose, respecting this, and Rennyson, having discovered the existence of this outstanding agreement, purchased it; "it came

[Rennyson *v.* Rozell.]

in opportunely," as he says: the consideration of the assignment was $10 or $11. Rennyson well knew, at the time of this purchase, that Rozell claimed the lot to be his own, as Rozell had repeatedly offered to sell it to him : Rennyson resided upon the adjoining lot, and knew that Rozell was in the exclusive possession, and that he was, at the time, engaged in the erection of a new and valuable building upon it. The precise date of this assignment is not shown; the paper itself has been lost or mislaid; it was executed, probably, in the latter part of September, 1875. At that time, the building was in progress and if not far advanced, its erection had been fully undertaken; according to the plaintiff's evidence, the foundation walls were laid or were in process of construction. Rennyson, either then, or soon afterwards, gave notice of his claim under the agreement, tendered the purchase money, and brought this ejectment. The property has very largely advanced in value; $600 was perhaps an adequate consideration, at the date of the agreement; its present value is stated to be from $4000 to $5000.

Under our system of jurisprudence, by which equity is administered under common law forms, an action of ejectment in such a case as this, is the equivalent of a bill in chancery, for specific performance. Relief, therefore, is not the absolute right of either party—it is of grace only, and rests in the discretion of the court to be exercised upon a consideration of all the circumstances of the case. That discretion is, of course, not an arbitrary one, depending upon the mere pleasure of the court; it is controlled by recognized and established rules ; and while no rule may be announced which will be applicable to all cases, "in general, it may be said, that the specific relief will be granted, when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice, and, that it will be withheld where upon a like view it appears that it will produce hardship or injustice to either of the parties: Willard *v.* Tayloe, 8 Wall., 557. It is not sufficient to call forth the equitable interposition of the court that the legal obligation under the contract may be perfect; if injustice would result from a decree for specific relief, the parties must be remitted to their remedies at law. Even when the agreement is perfectly good, the price adequate, and no blame attaches to the purchase, if the transaction be inequitable and unjust in itself, or rendered so by matters subsequently occurring, specific performance may be denied and the parties turned over to their remedy in damages: Henderson *v.* Hays, 2 Watts, 148 ; Remington *v.* Irwin, 14 Penn. St., 143 ; Freetly *v.* Barnhart, 72 Penn. St. 279.

[Smith *v.* Crosland.]

We are not inclined, under the special facts of this case, to grant the specific relief sought by the plaintiff. We are well persuaded, from an examination of the testimony, on the part of the plaintiff, and excluding from view the testimony on the part of the defence, that Mr. Rozell was justified in believing that the contract had been abandoned. That belief was a legitimate inference from the conduct and declarations of Newhall, after his purchase. Rennyson was, in no sense, an innocent purchaser; he entered into this controversy willingly, with his eyes open, and in the face of facts that gave him distinct and clear notice. He made no inquiry of Rozell as to the circumstances of his title and possession, although he well knew Rozell to be in the occupancy of the premises, and in the act of erecting valuable improvements thereon. These improvements were then fully undertaken, and have since been completed; the value of the property has thereby been greatly increased, and gross and manifest injustice must now inevitably result from a specific performance.

A vendee cannot enforce specific performance, when he has been guilty of laches or such conduct as was calculated to induce the other party to suppose that he had abandoned his contract: Zeigler *v.* Houtz, 1 W. & S., 533. Lapse of time and change of circumstances will, in some cases, induce a chancellor to refuse a decree, even where time is not of the essence of the contract: Bodine *v.* Glading, 21 Penn. St., 50.

We have considered this case solely upon the showing of the plaintiff's testimony, with which that of the defendant is in direct conflict. If the statement of facts made by the defendant be the true one, the plaintiff's contention is without the slightest merit.

Judgment affirmed.