## Bristol *against* Warner, executrix of *Thomas Warner*, deceased.

It is now the settled law of this state, that a promissory note not negotiable, and not purporting on its face to be for value received, does not imply a consideration; and an action on such a note cannot be sustained, without other proof of a consideration than such as the instrument itself furnishes.

But a promissory note in form negotiable, though not negotiated, imports a consideration, as well between the maker and payee, as between the maker and an indorsee.

Where *A* made and signed a writing in these words, " On demand, after my decease, I promise to pay *B*, or order, 850 dollars, without interest," which was delivered to *B*, as evidence of *A's* indebtedness to him; it was held, that this instrument was not of a testamentary character, to be proceeded with in the probate court, but was a promissory note, negotiable and irrevocable.

Where the plaintiff in an action on a promissory note, claimed, that he had rendered services for the defendant, which constituted the consideration of the note; and the defendant, for the purpose of proving that the plaintiff had been paid for such services, offered in evidence a writing, in the hand-writing of *H*, since deceased, who had been an arbitrator between the parties to settle their controversies, purporting to be a copy of the plaintiff's account against the defendant for such services; but when, or for what purpose, the writing was made, was not disclosed; nor did it appear, except from its being in the hand-writing of *H*, that it had been present before the arbitrators; it was

held, that no foundation was laid for the admission of this evidence, and it ought to be rejected.

Where a party introduces in evidence a writing as an admission of the adverse party, the whole becomes evidence in the cause, as well those parts which are in favour of the party making the admission, as those which are against him; and this evidence the jury are to consider, giving to every part and the whole such weight and effect as they think it entitled to.

Therefore, where the defendant, to establish his defence and show that nothing was due to the plaintiff, introduced in evidence a letter from the plaintiff; and to repel this evidence, the plaintiff referred to the same letter, claiming that in this respect, it furnished evidence in his favour; this the defendant denied, and objected to its being considered by the jury for that purpose; but the court instructed the jury, that the defendant having himself introduced the letter, had thus made it substantive evidence in the cause; it was held, that this instruction was unexceptionable.

THIS was an action of *assumpsit,* to recover the amount of a promissory note, alleged to have been made by the defendant's testator, with the usual money counts.

The defendant pleaded the general issue, with notice, that under such issue she would offer evidence to prove that the note described in the plaintiff's declaration was given without consideration, and was obtained by fraud.

The cause was tried at *Hartford, January* term, 1848, before *Storrs, J.*

On the trial, the plaintiff introduced in evidence an instrument, of which the following is a copy : " On demand, after my decease, I promise to pay *Josiah W. Bristol,* or order, eight hundred and fifty dollars, without interest. *Wethersfield, February* 24th, 1835.          THOMAS WARNER."

The making of this instrument being admitted by the defendant, the plaintiff thereupon rested his case, claiming that it imported on its face a valuable consideration. This the defendant denied ; and each party requested the court to charge the jury in conformity with their claims respectively. The court charged the jury in conformity with the claim of the plaintiff.

The defendant then undertook to show, that there was no legal consideration for the note. For this purpose, he offered evidence to prove, that the only consideration for the note consisted of services rendered by the plaintiff to *Thomas Warner,* between the years 1810 and 1825 ; that *Warner* and *Hannah* his wife, in 1810, conveyed to the plaintiff a piece of land, for the consideration of 106 dollars ; that in

1814, he purchased a house and lot, for the sum of 1350 dollars, and had the same conveyed to the plaintiff and himself; that on the 20th of *July* 1824, said *Hannah* devised to the plaintiff all her real estate, subject to the use thereof by her husband, during his life; that *Thomas Warner* afterwards repaired the house so conveyed to the plaintiff and himself; that the plaintiff, immediately after such purchase, entered into possession of the same, and continued in possession thereof, until he sold the same; and also, that *Thomas Warner* had a book account of about 700 dollars against the plaintiff; that said lands were so conveyed and devised to the plaintiff, in payment of his services; and that the property charged on the book of *Thomas Warner* to the plaintiff, was sold and delivered, and the rent of his half of said house was in payment of the plaintiff's services. In support of these claims, the defendant introduced in evidence, among other things, a letter from the plaintiff, of which the following is a copy:

*Hartford,*
June, 1848.

Bristol
*v.*
Warner.

"*Fredonia, January* 30th, 1845.

Dear Brother *Goodrich,*

I take this opportunity to inform you, that we are all well, &c. I have had news of uncle *Warner's* death; likewise, I have been informed how he has disposed of his property. I think he has done right in giving aunt *Warner* the whole of his property, after paying his just debts and his funeral charges; for I do think he would have died more than ten years ago, had it not been for her. I have a claim against his estate of 850 dollars, which is but just one-half what he honestly owes me for hard labour. Seven years after I was twenty-one years of age, did I work for that man, and the Lord knows that he never paid me one dollar for it, except my victuals and clothes; and if *Joseph Hale* was now living, he would say so, before the world. He agreed with my father to give me, at the age of twenty-one, as much as two men should say a good trade was worth. It was left to his own brother, *Daniel Warner* and *Joseph Hale;* and they brought in before him and me, that he should give me 250 dollars, which he agreed to do; but never did he pay me that money in this world. When I was twenty-eight years of age, and was then going to be married, I told him, that I had lived with him ever since I was eleven years

old, and we must have a settlement. He spent all one day looking over his books. He came and told me, he got puzzled, and could look no longer; but says he, *Josiah*, I honestly owe you more than 200 dollars interest money. This is just as true as I am now living. He then bought the brick house; took the deed in his own name; and there I lived and paid him rent for fourteen years. His first wife always told me she would give me her property. She told me so, more than ten years before she died; and told me repeatedly to get the writings made out, and she would sign them. I finally got her will made. It was brought into the house, and executed in the presence of uncle *Warner*, and, as I supposed, was perfectly satisfactory to him, until after his wife died. Then he was in a great fuss: he told me, that I owned his house and home-lot; and so I did. Well, what was to be done? He said he could not get married, unless he could have the house and home-lot free and clear, to give to his wife. I told him, that I wanted he should get married—I would do any thing that he said. We agreed to leave it to his own brother *Daniel* and *Joseph Hale*. I was to give up his house; he was to give me a deed of the brick house, which he did, and to have everything settled. But then I brought before these men my account for eight years after I was of age, and the 250 dollars which he was to give me at the age of twenty-one. He said, that he could not allow that then, but would make provision for me in his will. He told what property he would give me: one lot of land was the *Fortune* lot. He likewise told me, he intended to give my son *Thomas*, something in his will. Now, all these things I have stated here are true. When I was in *Wethersfield*, ten years ago, I had a long talk with Mr. *Hale*, on the subject what uncle *Warner* honestly owed me for hard work that I had done for him. He said, that Mr. *Warner* told him, he intended to do something for me; for I had been a faithful servant to him. But Mr. *Hale* says, 'he may make his will, and may do right by you, but somebody may entice him to alter it; and where then will you be?' which, it appears, has been the case, twice or three times. Mr. *Hale* told me, that I had better write a note for not more than half what he really ought to pay me, and to write it without interest, and tell him if he does for me in his will,

what he had promised to do, you would give the writing up. I did just as he told me. What I said to uncle was not in presence of his wife, neither did I talk to him a great while; but I told him, whether he put his name to the paper or not, I wanted him to give the paper back to me, for I wanted to keep it, to remember him by. Now, this is a copy of the writing. 'On demand, after my decease, I promise to pay *Josiah W. Bristol*, or order, 850 dollars, without interest. *Wethersfield, February* 24th, 1835. *Thomas Warner.*' And now, brother *Goodrich*, I want you to carry this letter to aunt *Warner*, and read it to her, and let her read it herself; and if she is not willing I should have this small sum out of the estate, I want to know it, right away. When I gave the will up that uncle *Warner's* first wife made, I gave up more than 2500 dollars of property, which aunt *Warner* is actually now in possession of. I had ought to have said, when I gave this paper to uncle, it was when aunt *Warner* was out of the room, the last day that I staid there: he told me to say nothing about it. I never did, and no person ever knew anything about it, except *Joseph Hale*. From the time I was sixteen, until I was twenty-eight, uncle *Warner* bought the *May* lot, two lots in the plain, one lot in the meadow, the *Hang-dog* lot, the *Willard* lot, the *Fortune* lot. All these parcels of land, he bought and paid for, because he had no hired man to pay in the fall. All this land that he bought by my labour, aunt *Warner* now owns, and I am glad of it; but he has not done right by me. Captain *Palmer, George Smith,* and twenty more, if they are living, will tell aunt *Warner*, whether I ever earned any of that property that she is now in possession of. When I gave up the property that aunt *Warner* gave me, I little thought things were coming out just as they have; but perhaps it is all for the best. I had been unfortunate in days that have gone by. I lost more than 1500 dollars, by Mr. *Tenney* and his son, besides losses from other people. I want you to go yourself, and carry this letter to aunt *Warner;* and I want you or she should write me. I should come down, if I could leave home, but *Martha* is so low, I cannot. *Frances* lives in *Buffalo; Thomas* in *Michigan; Hannah* is married, and lives half a mile from us. *Douglass Warner* has done his utmost to influence uncle *Warner* against me, ever since I

*Hartford,*
June, 1848.

Bristol
*v.*
Warner.

left *Wethersfield*, without the least provocation. I always treated him well. It is surprising to me, how it is possible that uncle and aunt *Warner* have been so blinded, by that fellow. He is now giving out, that aunt *Warner* and Mrs. *Savage* enticed the old man to give aunt *Warner* all his property; and he has determined now to break the will. Now, if aunt *Warner* does right, she will make him pay every cent there is due for the rent of the farm. The most that he has cared for uncle and aunt *Warner*, is, to get their money; and the people in *Canaan* say so. He told uncle *Warner*, after I left *Wethersfield*, it was not my intention to move *West*. I only wanted to make him believe so, to induce him to make his will, and give me his property; which was certainly a falsehood. I have always thought they would find him out. If aunt *Warner* wants to have me send this writing to you, I will send it. I remain your sincere friend and brother,

*Josiah W. Bristol.*"

The plaintiff offered evidence to prove, and claimed to have proved, that the consideration of the note, consisted of services rendered by the plaintiff for *Thomas Warner*, not only from the year 1810 to 1825, but also of such services from the year 1825 to 1830, in which last-mentioned year, it was agreed, that the plaintiff removed from *Wethersfield* to the state of *New-York*, where he has ever since resided.

The defendant denied that any part of the consideration of the note consisted of such services, after the year 1825; or that any services were rendered by the plaintiff to *Thomas Warner*, after that time, for which the plaintiff ever had any legal claim against him.

The defendant further claimed, and offered evidence to prove, that on the 16th of *March* 1825, the plaintiff and *Thomas Warner* agreed to submit the settlement and adjustment of their accounts and claims, to *Daniel Warner* and *Joseph Hale*, both since deceased; that said *Hale* and *Warner* thereupon proceeded to and settled and adjusted the same; and that *Thomas Warner* and the plaintiff then mutually executed discharges to each other of all claims and demands, both in law and equity, against the parties respectively.

To prove that *Thomas Warner* had in fact paid the plain-

tiff in full for his services, which the defendant claimed that he had done, the defendant offered in evidence, among other things, *Thomas Warner's* book, containing the account above mentioned ; and to prove that said account was taken into consideration, by *Daniel Warner* and *Joseph Hale*, at the time of the adjustment made by them, the defendant offered in evidence a copy, in the hand-writing of *Joseph Hale*, of *Thomas Warner's* account, as charged on book ; but no evidence was offered to prove, when such copy was drawn off ; or whether it was drawn off before or after the 16th of *March* 1825 ; nor whether it was ever seen by *Daniel Warner* or the plaintiff, except so far as it might be inferred from the fact, that it was in the hand-writing of *Joseph Hale*.

This evidence being objected to, by the plaintiff, said copy was ruled out, by the court ; but the book was admitted, to prove that *Thomas Warner* claimed the amount charged thereon to be due from the plaintiff, at that time, but not to prove the truth or correctness of the charges.

The defendant further relied on the discharge executed by the plaintiff to *Thomas Warner*, as a complete defence against all claims in favour of the plaintiff against *Thomas Warner*, existing at the time when it was executed.

The plaintiff claimed, and offered evidence to prove, that when the discharge was given, it was agreed by him and *Thomas Warner*, that the latter was indebted to the plaintiff in a larger amount than the note in suit ; and that, if the plaintiff would execute said discharge to *Thomas Warner*, he, *Thomas Warner*, would take no advantage of it, but would thereafter pay to the plaintiff in full the amount so agreed to be due to him ; and that, in pursuance of such agreement, and in consideration of the amount so due, and also of services rendered by the plaintiff for *Thomas Warner*, between the execution of the discharge and the fall of 1830, *Thomas Warner* gave the note in suit, on the day of its date.

To prove the facts referred to in said letter of the plaintiff, introduced by the defendant, the plaintiff offered in evidence an instrument, signed and sealed by *Thomas Warner* and the plaintiff, of even date with said note, of which the following is a copy : " This may certify, that *Thomas Warner* and *Josiah W. Bristol* have this day settled all accounts,

and we find due the said *Bristol,* the sum of 850 dollars, for which I this day give him my note or obligation, payable after my decease, being for labour and services rendered me, the said *Warner,* by the said *Bristol,* at various times ever since the year 1810; and when the aforesaid sum of 850 dollars is truly and honestly paid to the said *Bristol,* or his heirs, out of my estate, after my decease, then the said *Warner* and the said *Bristol* have settled all notes and accounts, of every name or nature. Whereunto we have put our names, and fix our seals, this 24th day of *February,* in the year of our Lord, 1835.

> *Thomas Warner.* [L. S.]
> *Josiah W. Bristol.* [L. S.]"

To this evidence the defendant objected; but the court admitted it.

In submitting the cause to the jury, the court instructed them, that the defendant, by introducing said letter, had made it substantive evidence to prove the facts therein stated; and that the plaintiff might make use of it, as such, for that purpose; but that it was not conclusive against the defendant; and that he was at liberty to prove, that it, or any part thereof, was untrue.

In the course of the trial, the defendant also claimed, and offered evidence to prove, that said note was fraudulently obtained from *Thomas Warner,* by the plaintiff, by means of various improper and fraudulent practices upon him, and was therefore utterly void; but that if not void on this ground, it was merely a testamentary paper, designed to dispose of a portion of the estate of *Thomas Warner,* after his death, and must be proved as such, in a court of probate; and that consequently, this action could not be maintained upon it.

The plaintiff denied all fraud in obtaining the note.

The court submitted the question of fraud to the jury on the evidence, and charged them, that if the note was thus fraudulently obtained, the plaintiff was not entitled to recover on it; but that the writing in question was a promissory note, on which the present action might be sustained, without any proof thereof in a court of probate, and that it was not a testamentary paper.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial.

*Toucey* and *Goodman*, in support of the motion, contended, 1. That this note, not expressing on its face a valuable consideration, does not import one. In actions on all simple contracts, a consideration must be averred and proved. 1 *Sw. Syst.* 393. 1 *Sw. Dig.* 174. 429. *Dodge* v. *Burdell*, 13 *Conn. R.* 170. Negotiable notes are simple contracts. *Slocum* v. *Sanford*, 2 *Conn. R.* 530. They have never been considered, in this state, instruments of a higher nature than notes not negotiable ; and these do not import a consideration. *Edgerton* v. *Edgerton*, 8 *Conn. R.* 6. 9.

2. That the account book of *Thomas Warner* ought to have been admitted as evidence of the truth of the charges therein. The transaction took place more than twenty years before ; the account, it is to be presumed, had been exhibited to the arbitrators, and passed upon by them ; and *Warner* and *Hale* were dead. Under these circumstances, the book was admissible, not only to show that *Warner* had made such a claim, but that the charges were well founded. *Cook* v. *Swan*, 5 *Conn. R.* 140. *Dwight* v. *Brown*, 9 *Conn. R.* 84.

3. That the letter of the plaintiff, offered in evidence by the defendant, was not *substantive* evidence to prove the plaintiff's claim. The rule is, that when an admission of a party is given in evidence, the whole must be received, for the purpose of explaining or qualifying the admission ; but this does not make any part evidence to prove other matters in favour of such party. No party can, by his declarations out of court, make evidence for himself. *Robinson* v. *Ferry*, 11 *Conn. R.* 460. 462. *Stewart* v. *Sherman*, 5 *Conn. R.* 244. *Ives* v. *Bartholomew*, 9 *Conn. R.* 309. *Garey* v. *Nicholson*, 24 *Wend.* 350.

4. That the writing on which the suit is founded, is a *testamentary* instrument ; it being a disposition of a person's property to take effect after his death. 1 *Sw. Dig.* 441. *Allison* v. *Allison*, 4 *Hawks*, 141. *McGee* v. *McCants*, 1 *McCord*, 517. *Singleton* v. *Bremar*, 4 *McCord*, 12. *Hunt* v. *Hunt*, 4 *N. Hamp.* 434.

*Hungerford* and *Parsons*, contra, contended, 1. That a negotiable promissory note imports a consideration. *Bayl.*

*Bills.* 33.    *Dutchess Cotton Manufactory* v. *Davis*, 14 *Johns. R.* 238. 245.    *Kimball* v. *Huntington*, 10 *Wend.* 675. *Townsend* v. *Derby*, 3 *Metc.* 363.    *Benjamin* v. *Fillman*, 2 *McLean*, 213.    *Hatch* v. *Trayes*, and *Watson* v. *Kightley*, 11 *Ad. & El.* 702.    (39 *E. C. L.* 207.)    *Camp* v. *Thompkins*, 9 *Conn. R.* 545.    And see numerous other cases collected in 3 *U. S. Dig.* 281. *pl.* 638. *& seq.*

2. That the instrument declared on has the form and requisites of a promissory note, and is capable of being enforced as a contract : it is not, therefore, of a testamentary character.    The deferring of the payment until after the death of the promiser, does not vary the nature of the undertaking.    *Burgh* v. *Preston*, 8 *Term R.* 283. 286.    *Roffey* admr. v. *Greenwell* & al. exrs. 10 *Ad. & El.* 222. (37 *E. C. L.* 99.)    *Shields* v. *Miffin*, 3 *Yeates*, 389.    An instrument not designed as a will, by the party making it, is never deemed testamentary, unless it becomes necessary that it should be so treated, in order to effect the object intended. *Peacock* v. *Monk*, 1 *Ves.* 127.    *Ousley* v. *Carrol*, cited in *Ward* v. *Turner*, 2 *Ves.* 440.    *Masterman* v. *Maberly*, 2 *Hagg.* 235. (4 *E. Ecc. R.* 103.)    *Hunt* v. *Hunt*, 4 *N. Hamp.* 434.    1 *Williams on Exrs.* 58.

3. That the charge was unexceptionable regarding the plaintiff's letter to *Goodrich*.    In the first place, it is to be observed, that no question was made by counsel in relation to it ; nor was the court asked to charge the jury one way or the other.    But secondly, there was nothing erroneous in the charge.    By "*substantive* evidence" nothing more was meant than this—that it was evidence to be considered and weighed by the jury.    This rule is one adopted in all cases where the admissions of a party are given in evidence—the whole is to be taken together.    See *Vibbard* v. *Staats*, 3 *Hill*, 144.    *Randle* v. *Blackburn*, 5 *Taun.* 245.    *Gough* v. *St. John*, 16 *Wend.* 646. 652.    *Field* v. *Hitchcock*, 17 *Pick.* 182.

4. That the copy of the account, in the hand-writing of *Hale*, offered in evidence, was properly rejected.    It was an unauthenticated paper.    The book was not admissible, in this action, to prove that the charges were correct.

CHURCH, Ch. J.    1. The question first presented by this

motion, is, whether the note in controversy imports, on its face, a valuable consideration ? We think it does ; and that the charge to the jury on this point, was correct. It has now become the settled law of this state, after a time of some doubt, that a promissory note not negotiable, and not purporting on its face to be for value received, does not imply a consideration ; and that a plaintiff, prosecuting such a note, is left to prove one, or fail to recover. *Edgerton* v. *Edgerton*, 8 *Conn. R.* 6.

But this note, is, in form, negotiable, though not yet negotiated ; and no consideration is expressed in it. And therefore, it was claimed at the trial, that it should be treated as if it were not negotiable paper ;—that it, being a simple contract, and as yet confined in its operation to the original parties to it, required proof of consideration. But we believe that the negotiability of the note gave it a character and a credit at its inception, then importing a consideration, as well between payer and payee, as between the maker and indorsees or subsequent holders. We suppose this court so regarded it, in the case of *Camp* v. *Tompkins,* 9 *Conn. R.* 545. in which it is said, that such instruments, as well as bills of exchange, from their very nature, import a consideration. Our statute making a certain description of notes negotiable, intended to give to them the same effect here, as such paper was known to have in *England,* and in the commercial community generally. The most respectable elementary writers upon this branch of the law, treat this as a well established principle. Mr. *Chitty* says : "In the case of bills of exchange and promissory notes, they are presumed to *have been* on good consideration ; and it is not necessary for the plaintiff to state any in his declaration, or prove it, in the first instance, on the trial, &c." *Evans,* in his learned commentary on *Pothier,* remarks, that " the case of bills of exchange and promissory notes, affords, in some degree, an exception to the general rule, which has been under discussion, when they are indorsed over for a valuable consideration ; the want of consideration, between the original parties, is immaterial ; as *between them,* a consideration is presumed ; but if the contrary is shown, it is a sufficient defence." Chancellor *Kent,* in his commentaries, speaks thus : " It is usual to insert *value received* in a bill

or note; but this is unnecessary, and value is implied in every bill, note, or indorsement." *Chitty on Bills*, 67. 2 *Pothier on Obligations*, 22. 3 *Kent's Com.* 50. 1 *Stephens' N. P.* 766. *Goshen & Minisink Turnpike Co.* v. *Hurtin*, 9 *Johns. R.* 217. *Mandeville* v. *Welch*, 5 *Wheat.* 277. 2 *McLean*, 212. And yet, there is an essential difference between promissory notes, before they are indorsed and afterwards, in respect to their original consideration. In the former case, a consideration is implied, but may be denied in defence; while in the latter, only in special cases: it cannot be disputed, if the holder be a meritorious one, receiving the paper before due.

2. It is said, that this paper is merely testamentary, and should have been proceeded with, as such, in the probate court. We see nothing of this character attached to it, either upon its face, or from the circumstances claimed to have been connected with its execution. To be sure, it is payable after the death of the maker; but this alone does not constitute it a will. Notwithstanding this, it is only what it purports to be,—a promissory note. It is an obligation to pay; it was delivered to the payee, as an evidence of debt; and it is made payable to order, as a negotiable and irrevocable instrument. *Burgh* v. *Preston*, 8 *Term R.* 483. 486. *Roffey* v. *Greenwell*, 10 *Ad. & El.* 222. (37 *E. C. L.* 99.) *Stein* & al. v. *North*, 3 *Yeates*, 324. *Toner* v. *Taggart*, 5 *Binn.* 490.

There are a few cases, in which, papers not strictly testamentary in their object, have, however, been treated as such, when otherwise, they would entirely fail of effect: and we recollect no case, nor do we know of any good reason, why an instrument intended as obligatory *inter vivos*, should be construed or treated as a will, except for the cause suggested. *Masterman* v. *Maberly*, 2 *Hagg.* 235. (4 *E. Ecc. R.* 103.)

3. The defendant offered in evidence a copy of the accounts of the deceased, under the circumstances stated in the motion, for the purpose of proving that the plaintiff had been paid for the services, which, he now claims, constituted the consideration of this note. This paper was in the hand-writing of *Joseph Hale*, since deceased, who was one of the arbitrators, to whom the parties had submitted their matters

for adjustment ; but when this copy was made, or for what purpose, was not disclosed ; nor did it even appear that it was present before the arbitrators, or that the plaintiff ever knew of its existence. Therefore, no foundation was laid for the admission of this evidence, and it was properly rejected.

4. To show that nothing was due to the plaintiff, the defendant, among other evidence, read the plaintiff's letter, dated *January* 30th, 1845 ; and he especially relied upon a discharge, dated *March* 16th, 1825, as a defence to the action. To repel this, the plaintiff referred to the same letter, and claimed, that in this respect, it furnished evidence in his favour ; and this the defendant denied, and objected to its being considered by the jury for that purpose. The judge, as to this, charged, that the defendant, having himself introduced the plaintiff's letter, had thus made it *substantive evidence* in the cause. We see no good objection to this instruction.

The defendant, with his eyes open, read to the jury the whole of the plaintiff's letter as evidence ; and therefore, made the whole of it evidence, to which either party had a right to refer, and upon it, to rest an argument and a claim. By " substantive evidence," the judge did not mean *conclusive* evidence, nor even evidence which the jury was bound to believe ; but only that it was, if true, relevant to the matter in dispute, to prove or disprove, as distinguished from mere explanatory evidence. If a party reads a will, or other document, in evidence, in which there may appear to be inconsistent provisions, he makes the whole *substantive* evidence in the cause, as well for the benefit of his adversary as himself. *Gough* v. *St. John*, 16 *Wend.* 646. *Vibbard* v. *Staats*, 3 *Hill*, 144. *Field* v. *Hitchcock*, 17 *Pick.* 182. *Randle & al.* v. *Blackburn*, 5 *Taun.* 245.

We do not think that the reasons offered for a new trial are sufficient.

In this opinion the other Judges concurred.

New trial not to be granted.