GRANDERSON R. PHARES

*v.*

NORRIS S. BARBER.

61 271
169 121
61 271
181 328
61 271
e205 ⁵100

1. EVIDENCE—*admissibility of.* In an action on a promissory note by the payee against the maker and his sureties, one of the issues involved was, whether or not the sureties had been released by an agreement between them and the payee upon a sufficient consideration. The existence of such an agreement was positively testified to by one of the sureties and the principal maker, and as positively denied by the payee. In rebuttal the plaintiff introduced a witness who detailed a conversation between the payee and the sureties in regard to an application which they intended to make to the principal maker, to prevail upon him to secure the debt in some other manner. It was also in evidence that the principal maker had executed to the payee a certain mortgage. Upon cross-examination the

witness was asked if anything was said in that conversation about releasing the sureties from the note. Objection was made to the question and sustained by the court: *Held*, the question should have been answered.

2. SAME—*latitude of cross-examination.* The objection to the question that it was leading could not prevail, for, on cross-examination, a party has a right to propound leading questions.

3. Neither can it be said that the refusal of the court to permit the question to be answered excluded no fact from the jury, for it forestalled inquiry which may have resulted in important testimony.

4. And counsel are not bound to disclose the object of questions, upon cross-examination, when the court can easily see that they are germane to the issue.

5. SAME—*conversations between parties.* Besides, when a witness details a conversation, the party against whom the evidence is offered is entitled to the whole of the conversation.

6. SAME—*witness—jury.* In respect to the effect of the mortgage given by the principal maker of the note to the payee, on the liability of the sureties, the former testified as follows: "My understanding was at the time, and still is, that the mortgage was given to release the securities and secure the payment of the note. I think Barber (the payee) understood it in that way also:" *Held*, the evidence was properly excluded from the jury. The purpose in the execution of the mortgage could only be ascertained by the acts and declarations of the parties in connection with the instrument. The object of the testimony should have been, not to obtain the idea of the witness upon undisclosed facts, but to elicit facts to enable the jury to form their own conclusion.

7. SAME—*phonographic report of testimony.* A transcribed phonographic report of the evidence of a witness given on a former trial, can not be read for the purpose of contradicting the witness on the subsequent trial. The legislature has not declared that such reports shall be evidence for any purpose.

APPEAL from the Circuit Court of Peoria county; the Hon. S. D. PUTERBAUGH, Judge, presiding.

This was an action of assumpsit, brought by Norris S. Barber against Granderson R. Phares, Thomas J. Huffman and William Croka, on the following promissory note:

"On the 1st day of February, 1858, we, or either of us, promise to pay Norris S. Barber, or bearer, of Knox county,

Illinois, the sum of $314, it being for value received, with use. Dated Elba, Knox county, Illinois, this 30th day of January, 1857.

                              G. R. PHARES,
                              THOMAS HUFFMAN,
                              WILLIAM CROKA."

The defendants, Phares and Croka, pleaded as follows:

*First*—Non-assumpsit.

*Second*—That they signed the said note sued on as securities for Thomas J. Huffman, and that said Huffman afterwards, and before the commencement of this suit, paid the note in personal property, viz: Two horses, set of harness, a plow and a wagon, which were accepted by plaintiff in discharge and payment of said note.

*Third*—That they were sureties, and that plaintiff, after the note was due, on April 12, 1858, extended the time for the payment of said note to the 6th day of January, 1859, for a valuable consideration, without their knowledge and consent, and took a chattel mortgage from Huffman to secure the debt.

*Fourth*—That they were sureties, and after the note became due plaintiff took other and different security from the defendant Huffman, viz: a chattel mortgage on two horses, set of harness, a wagon and a plow, with the agreement that the taking of such other security should release defendants Phares and Croka, from all liability on said note.

A trial by jury resulted in a verdict and judgment for the plaintiff for $382.47, from which judgment the defendant Phares appeals.

Mr. D. McCULLOCH, and Messrs. WEAD & JACK, for the appellant.

Messrs. JOHNSON & HOPKINS, for the appellee.
    18—61ST ILL.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

Appellant and one Croka were sureties upon a note.executed by them and Huffman, as principal, to appellee.

It would be alike unimportant and improper to review the evidence, as the case must be submitted to another jury for the error of the court below in refusing a proper question to be answered which might have elicited competent and material testimony.

One of the issues, and the main one, was, whether or not the sureties had been released from their obligation to pay the note by an agreement between them and the payee of the note, upon a sufficient consideration.

The existence of such an agreement was positively testified to by appellant and Huffman, and as positively denied by appellee.

In rebuttal, appellee introduced as a witness one Ford, who detailed a conversation between appellee and the sureties in regard to an application which they intended to make to Huffman, to prevail upon him to secure the debt in some other manner.

Upon cross-examination, this witness was asked the following question: "Was anything said in that conversation about releasing Phares and Croka from the note?" Objection was made to the question and sustained by the court, and exception taken.

This question should have been answered. Upon cross-examination a party has a right to propound leading questions. The answer would necessarily have been merely affirmative or negative. If affirmative, the natural and necessary inquiry would have been, "What was said about releasing them?"

It is said that the refusal of the court excluded no fact from the jury. It may have had the same effect. It forestalled inquiry which may have resulted in important testimony.

Counsel are not bound to disclose the object of questions upon cross-examination when the court can easily see that they are germane to the issue.   In such case, it is not necessary to propose to the court to prove any particular fact.  Such practice would destroy the power and defeat the ultimate purpose of cross-examination.

It is also a well settled rule that, where a witness details a conversation, the party against whom the evidence is offered is entitled to the whole of the conversation, and any action of the court which prevents its obtainment violates this rule of law.

The question was proper, and the objection to it should have been overruled.

It is also contended that the court erred in excluding the testimony of Huffman as to his understanding of the effect of a mortgage given by him to appellee.   The following is the language of the witness :  "My understanding was at the time, and still is, that this mortgage was given to release the securities and secure the payment of the note.  I think Barber understood it in that way also."

The purpose in the execution of the mortgage could not be ascertained in this manner.   This could only be determined by the acts and declarations of the parties in connection with the instrument.

If the term "understanding" was used as synonymous with "opinion," then the evidence was properly excluded.  The mere statement of the case is a sufficient argument to show the impropriety of the witness in the expression of an opinion. The very object of impanelling a jury was to exclude all mere opinion and submit to them the facts for their opinions.

If the witness employed the word in its common acceptation, the ruling of the court was still unquestionably right. Understanding, in common parlance, means a comprehension of a particular state of things.   The object of the testimony should have been not to obtain the idea of the witness upon

undisclosed facts, but to elicit facts to enable the jury to form their conclusion.

The testimony was properly excluded.

We do not think it was error to refuse the introduction of the testimony of appellee for the purpose of contradiction, as transcribed from a phonographic report of a former trial between these parties. So far as the record shows, appellee had never seen this transcript of his evidence, and did not even know of its existence. It may have been a fair and truthful report of his testimony, and it may not.

These reports are taken for the convenience of the parties. The legislature has not declared that they shall be evidence upon the trial, or for any purpose, and we have no power to legislate.

For the refusal to permit the witness Ford, to answer, the judgment is reversed and the cause remanded.

*Judgment reversed.*