## NELSON MORRIS

*v.*

## MALCOLM M. JAMIESON *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 2, 1903.*

1. EVIDENCE—*when contents of letter may be proved in connection with statement of account.* If plaintiff in an action of assumpsit against a stock broker introduces a statement of account as an admission of the amount to his credit from a "short sale" of stock, the defendant may, on cross-examination, establish the contents of a letter, in which the statement was enclosed, showing that defendant had borrowed the stock at a price exceeding the amount realized from the sale.

2. SAME—*particular trade usages or customs must be proved.* Particular trade usages or customs, however extensive they may be, can not be noticed by the courts unless established by proof.

3. PLEADING—*when a count for money had and received will not lie.* An action under the common counts for money had and received will not lie for breach of defendant's duty as an agent or broker, as in such case a special count averring the duty, and the breach thereof, is necessary.

4. SAME—*when a party cannot waive tort and bring assumpsit.* The right of a party to waive a tort and bring assumpsit does not extend to cases arising out of breach of contract or of a legal duty arising out of contract.

*Morris v. Jamieson*, 99 Ill. App. 32, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDWARD P. VAIL, Judge, presiding.

May 30, 1896, appellant sued Malcolm M. Jamieson and others, constituting the firm of Jamieson & Co., in the circuit court of Cook county, in assumpsit. The declaration consists of the common counts only, and includes counts on an account stated, a count for interest and a count for money had and received. Defendants pleaded the general issue. At the conclusion of the evidence for the plaintiff, the court, on motion of the defendants, excluded the plaintiff's evidence and directed the jury to find the issues for the defendants. An appeal was prosecuted to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, and this appeal is prosecuted.

The suit was for an alleged balance due from defendants to plaintiff. The only evidence produced on the trial was certain documents and letters, and the testimony of Charles E. Davis, secretary of appellant.

Appellant assigns error of the Appellate Court in affirming the judgment of the circuit court and rendering judgment against appellant, and in not reversing the judgment of the circuit court and remanding the cause.

But two propositions are argued: First, that the circuit court erred in directing the verdict for appellees; and second, that the action would lie upon the common counts for money had and received. These are the only matters material to be considered in this case.

DUPEE, JUDAH, WILLARD & WOLF, for appellant.

FRANCIS A. RIDDLE, and JAMES E. MUNROE, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

The position taken by the appellees, and evidently entertained by the trial and Appellate Courts, is, that the action in question could not be maintained under the

common counts, and, there being no evidence that would warrant a verdict and judgment under such counts, the instruction asked was given. If the action could not be had under the common counts, then it is conceded that the instruction should have been given, and to properly determine whether it was necessary that the declaration should contain special counts upon the case or whether the common counts were sufficient, it will be necessary to review the evidence.

The appellees were brokers in Chicago, and as such brokers or agents dealt in stocks, and appellant was a trader in stocks for profit. About December 1, 1892, appellant directed appellees to sell one thousand shares of Street's Stable Car Line stocks (hereafter called Street stock) for the sum of $29,000, deliverable to the purchaser within sixty days. This stock appellant did not own, and the sale is what is called "a short sale." Before the time for the delivery of this stock, Jamieson & Co., at the request of appellant, did what is termed "borrowing the stock" for appellant for delivery on his contract of sale, and paid to the lender of the stock $30 per share, or in all $30,000 for the loan of the stock, and delivered the stock to the purchaser about January 31, 1893, and on the latter date sent to appellant a written report of the transaction. Davis, the only witness, testified that the business relations between appellant and appellees, which began some time in 1892 and was terminated in June or July, 1893, involved the purchase and sale of about sixteen thousand shares of stock, but that all the stock transactions between the parties, except the one of December 1, 1892, above mentioned, were fully settled, and that the last named transaction is the only matter involved in this litigation. Reference is made to other transactions for the reason that in various statements rendered by appellees to appellant other matters appear, and without some explanation might be confusing.

Eight statements made by appellees to appellant of the account between them, in so far as it related to the stock involved in this suit, were offered in evidence by appellant. The first statement introduced in evidence was that of date January 31, 1893, and is as follows:

"Plaintiff's Exhibit 1.

Sold for a/c No. 25.

| | | | | |
|---|---|---|---|---|
| Dec. 1. | 1000 Street's s/60, 29.................................................. | | | $29,000 |
| | 60 days' int..... ................................................... | | | 290 |
| | | | | $29,290 |
| | Less dividend 1 %............................................ ...... | | 1,000 | $28,290 |
| | Less comsn .................................................... | | | 125 |
| | | | | $28,165 |

Chgo. Jany. 31, 1893.—Ent. Davis."

This statement was enclosed with a letter, which appellant did not offer in evidence at the time he offered the statement, but upon direct and cross-examination, Davis, the secretary of appellant, who testified that he had entire charge of the stock transactions between appellant and appellees, testified that "on the 31st of January Jamieson & Co. reported to Nelson Morris that they had borrowed one thousand shares of stock and delivered it out on this short sale, and they sent a memorandum of that transaction. I did not know personally that they did do anything of that kind, but that is the way they reported. The report was in writing." Upon cross-examination the witness testified that plaintiff's exhibit No. 1, above set forth in this opinion, came to Nelson Morris enclosed in a letter written by appellees to appellant, dated January 31, 1893, which he identified, and which letter contained the statement: "We made deliveries of one thousand shares and hand you herewith memorandum of same. We have borrowed the stock for four months, flat, at 30." The witness, Davis, testified that the word "flat," used in the letter above quoted from, means without interest. He also testified that appellees borrowed the stock at the request of appellant to deliver in this short sale, and that he supposed appellees furnished the money to borrow it; that Nelson Morris never gave his check for it or paid for it.

The eight statements made by appellees to appellant of the transaction in question, and offered in evidence by appellant, were made at the end of each of the months of January, February, March, April, May, June, July and August, 1893. It will not be necessary to incorporate in this opinion all these statements, but the following will be sufficient:

PLAINTIFF'S EXHIBIT 2, A. L. K.

Feb. 2, A. M.

Dr.        No. 25.        In Account with Jamieson & Co.        Cr.

| DATE | | AMT. | INT. | DATE | | | PRICE | AMT. | DAYS | INT. |
|------|---|------|------|------|---|---|-------|------|------|------|
| Jan..31 | Balance short | 28,165 | | Jan. 1 | Balance | | | 5,937.35 | 31 | 30.67 |
| " | " " | 5,968.02 | 30.67 | 31 | 1,000 Streets s/ 60 less Div. 1% | | 29 | 28,165 | | |
| | | | | | Interest | | | 30.67 | | |
| | | 34,133.02 | 30.67 | | | | | 34,133.02 | | 30.67 |
| | | | | Feb. 1 | Balance | | | 5,968.02 | | |
| | | | | | " short | | | 28,165 | | |
| | | | | | 1,000 Street car line | | | | | |
| | | | | | 1,000 " s/60 | | | | | |

PLAINTIFF'S EXHIBIT 6, A. L. K.

June 7, A. M.

Dr.        No. 25.        In Account with Jamieson & Co.        Cr.

| DATE | | AMT. | INT. | DATE | | | AMT. | DAYS | INT. |
|------|---|------|------|------|---|---|------|------|------|
| May 31 | Balance | 4,076.59 | 20.95 | May 1 | Balance | | 4,055.64 | 31 | 20 95 |
| " | short | 56,935.15 | | | " short | | 56,935.16 | S | |
| | | | | | 2,000 Streets | | | | |
| | | | | 31 | Interest | | 20.95 | | |
| | | 61,011.75 | 20.95 | | | | 61,011.75 | | 20.95 |
| | | | | June 1 | Balance | | 4,076.59 | | |
| | | | | | " short | | 56,935.16 | | |
| | | | | | 2,000 Streets | | | | |
| | | | | | | O. K. Davis. | | | |

PLAINTIFF'S EXHIBIT 8, A. L. K.

Dr.        No. 25.        In Account with Jamieson & Co.        Cr.

| DATE | | PRICE | AMT. | DAYS. | INT. | DATE | | AMT. | DAYS | INT. |
|------|---|-------|------|-------|------|------|---|------|------|------|
| July 25 | Div. 1,000 Streets | 1 | 1,000 | 5 | 83 | July 1 | Balance | 4,096.98 | 31 | 21.17 |
| 21 | Balance Interest | | | | 20.34 | | do short | 29,872.66 | | |
| | do short | | 29,872.66 | | | | 1,000 Streets | | | |
| | Balance | | 3,117.32 | | | 31 | Interest | 20.34 | | |
| | | | 33,989.98 | | 21.17 | | (O. K. Davis) | 33,989.98 | | 21.17 |
| | | | | | | Aug. 1 | Balance | 3,117.32 | | |
| | | | | | | | do short | 29,872.66 | | |
| | | | | | | | 1,000 Streets | | | |

These are fair samples of all the accounts, and the particular item in controversy is referred to in all the various counts in substantially the same manner, and in every such account so rendered it is shown that the one thousand shares of Street stock was short. Davis testified that appellees had paid to appellant all balances appearing in any of these accounts, except that relating to the sale of the one thousand shares of Street stock

of December 1, and that on the 29th day of August, 1893, he tendered to appellees one thousand shares of Street stock; that the market value of the one thousand shares so tendered was on that day $18,000, and that on making such tender he demanded from appellees the sum of $11,-872.66, the same being the difference between $29,872.66, which appellant claimed as a credit to him, and $18,000, the market value of the stock tendered; that appellee Jamieson took the stock, requested witness to remain a few moments in his office while he went on change, and that Jamieson went away and returned in about fifteen minutes and handed the stock back to witness, saying that the person from whom the stock had been borrowed had refused to receive it; that witness took the stock away with him; that he did not know how many times appellees had borrowed stock on account of the sale in question; that they reported having borrowed it on two occasions. The lender of the stock, as appears from the evidence, was a Mr. Koch.

Before appellant took the one thousand shares of Street stock to appellees and tendered it, as the witness Davis testifies, to make good their short sale, appellant had received two letters relating to this borrowed stock, as follows:

*"Nelson Morris, Esq., City:*        "CHICAGO, *June 3, 1893.*

"DEAR SIR—We have borrowed one thousand shares Street's Stable Car Co. at ninety days from May 31, the lender paying us interest at the rate of two per cent per annum.

"Yours truly,        JAMIESON & Co."

"CHICAGO, *August 22, 1893.*
*"Nelson Morris, Esq., U. S. Yards, Chicago:*

"DEAR SIR—We notified Mr. Ed. Koch yesterday, from whom we borrowed the thousand shares stock for your account, that you desired to deliver the same at the expiration of contract, if agreeable to him. He notifies us to-day that he is not in financial condition to accept the stock now or at the expiration of contract.        "Yours truly,        JAMIESON & Co."

'Appellant replied to these letters by the following:

"CHICAGO, ILL., *Aug. 24, 1893.*

"*Messrs. Jamieson & Co., 187 Dearborn St., City:*

"GENTLEMEN—Yours of the 22d was duly received. Our Mr. Davis called to see your Mr. Jamieson twice yesterday in regard to it, but not finding him in called again to-day, and now informs me that you tell him that Mr. Koch never put up any margins on this deal, although you called upon him to do so some time ago, and that you did not thereupon order the stock sold under the rules of the exchange, because there was no market for it. In view of these facts, and the fact that you never heretofore advised me of them, I do not see how I can do other than look to you to make good the amount which I should have received had you properly looked after the trade and not neglected my interests. You will therefore kindly oblige me by sending me your check for the amount due me, based on the present market price for the stock. Kindly give this matter your immediate attention.

"Yours truly,                              NELSON MORRIS."

Under the evidence, as is shown by the testimony of Davis, appellant's secretary, appellees had borrowed the stock and advanced their money for it to fill the sale made by them at appellant's request, the sum advanced being $30,000, and, leaving out the question of dividends and commissions, was at least $1000 more than the money appellees had received in the transaction to be placed to the credit of appellant. The witness Davis also testified that he knew the practice with reference to borrowing stock, and that when it was borrowed for such transactions it was upon the market price at the time of the borrowing. It will be observed that the sale was made December 1, 1892, and the delivery January 31, 1893, which was just at the expiration of the sixty days. Appellant had notice, then, of the borrowing and of the rate per share that was advanced by appellees to borrow this stock, the fact of the borrowing and the price being expressly stated in the letter of January 31, 1892. Appellant also knew that he had paid nothing for the stock that had been borrowed, and that the lender of the stock was unable to receive the same back and refund the

money advanced by appellees to borrow the same. With all these facts before appellant, his letter of August 24 was written, in which he insists that because appellees did not require Koch, the lender of the stock, to put up margins on the deal and thus protect the stock, appellees should receive the one thousand shares of such stock from appellant and pay him the difference in cash, and on their failure to do so appellant brought his suit, laying his damages at $17,000. Under such state of facts, could appellant recover for money had and received?

Appellant's position now is, that as appellees sold one thousand shares of stock on account of appellant and received the proceeds of such sale and so reported to appellant, and at continuous monthly periods rendered him statements of account showing such proceeds to his credit, and appellant having afterwards, in due time, tendered the stock, appellees therefore became liable to appellant for money had and received to his use. Appellant cites sections 117 and 118 of 2 Greenleaf on Evidence, wherein it is said (sec. 117): "The count for money had and received, which in its spirit and objects has been likened to a bill in equity, may in general be proved by any legal evidence showing that the defendant has received or obtained possession of the money of the plaintiff, which in equity and good conscience he ought to pay over to the plaintiff." And in section 118: "What is money had and received? * * * If the defendant was the agent of the plaintiff and the evidence of his receipt of the money is in his own account rendered to his principal, this will generally be conclusive against him, unless he can clearly show that it was unintentionally erroneous."

Appellant cites authorities to the effect that if one renders an account from time to time which contains the statement that money is received to the credit of another, he is bound by that action, unless he can show the statement was made unintentionally and by mistake. We can not see that the rule of law thus invoked has any ap-

plication to the case at bar. The argument proceeds upon the theory that appellant is now insisting upon and brought his suit for the $28,165, which he says appears from the statement of January 31, 1893, made by appellees to him, as being to his credit. This contention is not supported by the record. To begin with, his suit is only for $17,000, and was begun after a tender of certain stock and a demand of a balance. Nor do we agree with the position taken by appellant that the evidence in this case shows or tends to show that appellees reported on January 31, 1893, or at any other time, the bare fact that they had $28,165 on their books to his credit on account of the transaction in question. Appellant's contention is, that he only offered the statement of the account, and did not offer the letter in which that statement was enclosed, which letter apprised appellant of the fact that the one thousand shares which had been delivered under that sale had been borrowed by appellees for appellant's benefit, to carry out the trade, and for which they had paid $30,000, and that appellees, by bringing out the contents of the letter on cross-examination, could not have the benefit of it in determining whether the instruction should have been given. In other words, his position, as we understand it, is, that the statement of the account was an admission, complete, separate and distinct in itself; that the letter enclosing the statement containing the reference to the stock borrowed upon which to realize the money so reported was not so connected with it that appellees can have the benefit of it, and that it was error in the court to admit it, and it should not have been considered.

The memorandum evidenced the delivery of the stock on short sale to the seller and the amount of the purchase price received by appellees for it. The letter showed where, how, at what price and on what terms appellees acquired the stock which they so delivered for appellant, and we think would be admissible under the rule as stated by appellant, viz,: "The rule regarding admissions

is, that only those parts of the whole conversation or writing which cover the same subject matter as that of the adverse party's examination are made admissible by the introduction of such conversation or writing, or parts thereof, even though other parts may relate to the general subject matter in issue in the suit." The statement of account as offered by appellant was for the purpose of showing an admission on the part of appellees that they had in their hands moneys of appellant to the amount named in the statement, and, as we view the statement and the letter, the former advised appellant that appellees had received $29,000 upon a sale of stock directed by appellant to be made, and the letter accompanying that statement also informed appellant that appellees, in order to realize the $29,000 thus reported, paid $30,000 to borrow stock to enable them to carry out the instruction of appellant.

*Mumford* v. *Whitney*, 15 Wend. 380, one of the cases cited by appellant, seems to us to be quite conclusive against his contention. In that case the question was as to a license to build a dam. One Cleveland wanted to build a dam. The plaintiff had examined a witness as to declarations made by the defendant at or about the time of the erection of the dam and concerning such erection. The defendant's counsel, on cross-examination of the same witness, asked him whether, in the same conversation, the defendant had said that the plaintiff had given his consent to the erection of the dam. This evidence was objected to and the objection overruled. A witness in the same case had given an account of an unsigned, written agreement, and then testified that Cleveland, at the time, agreed to construct a stone wall along the east line of the island to protect it from injury, and after giving such testimony the plaintiff's counsel inquired of the witness whether it was understood between plaintiff and Cleveland that Cleveland should not build the dam unless he built a wall to secure the island. The

court sustained the objection to this last question. In discussing the question the court held: "The rule must certainly have some such limitation. It could not be tolerated that a party could thus draw out his own declarations upon a subject on which the opposite party had not examined the witness. But in this case the subject matter of the inquiry by the plaintiff was what the defendant had said concerning the erection of the dam, and his answer probably was that he had built it, and he then assigned the reason by his cross-examination, viz., because the plaintiff had assented to it. Without such assent he would have had no right to do the act. It seems to me that the cross-examination was proper."

We think the true rule is stated in *The Queen's case*, 2 Brod. & Bing. 297, where it is said: "The conversations of a party to the suit relative to the subject matter of the suit are in themselves evidence against him in the suit, and if a counsel chooses to ask a witness as to anything which may have been said by an adverse party, the counsel for that party has a right to lay before the court the whole which was said by his client in the same conversation,—not only so much as may explain or qualify the matter introduced by the previous examination, but even matter not properly connected with the part introduced upon the previous examination, provided, only, that it relate to the subject matter of the suit, because it would not be just to take part of a conversation as evidence against a party, without giving the party, at the same time, the benefit of the entire residue of what he said on the same occasion." The following cases further illustrate the rule:

Plaintiff demanded statement of a claim, and defendant made out an itemized statement of the amount due plaintiff for goods sold to defendant and delivered it to defendant's agent with instructions to demand a counter claim for demurrage, which counter-claim the agent wrote on the statement of the account and went to plaintiff to

settle. Being unable to settle he left the paper with plaintiff. Plaintiff in the suit offered the paper, together with the circumstances of its receipt, and judgment was given for the amount, less the demurrage. Plaintiff appealed, insisting that the statement of plaintiff's account by defendant was conclusive upon him. The court said: "The defendant never admitted this account as distinct from the demurrage. His statement was made all in one breath, and I cannot distinguish what he admitted to be due for the timber from what he claimed for the demurrage. The verdict, therefore, was only for the balance, and was perfectly right. Sinclair was to go to the plaintiffs to settle the account,—to receive what was due from them and allow what was due to them. It would be doing monstrous injustice if we were not to hold that the whole of the declaration must be taken together. I always have thought that if a man gave an account of a transaction, the whole of it must be taken together." By Lord Mansfield in *Randle* v. *Blackburn,* 5 Taunt. 247.

Suit for one dollar had and received; judgment for the plaintiff upon the ground that the defendant had said he had received a dollar of the plaintiff, but it was his due. The court said: "The justice was manifestly wrong. The whole conversation of the defendant must be taken together. The plaintiff could not take one part and reject the other. What was said by the defendant, taken together, was a denial of the demand of the plaintiff, who was bound to prove it." *Carver* v. *Tracy,* 3 Johns. 427.

Action for medicine and attendance; judgment for plaintiff, upon the admission of the defendant that the medicine and attendance had been furnished her, but at the same time she denied her responsibility for the amount because she had not employed the plaintiff and because she was a minor. The court said: "For anything that appears,—and, indeed, such is the reasonable intendment,—she was living with her father and the medicine and attendance furnished at his request. An infant

who lives with and is maintained by her father cannot bind herself for necessaries. The confession of the defendant, when all taken together, showed that she was not responsible, admitting that the medicine and attendance had been furnished, without something more being proved by the plaintiff." *Wailing* v. *Toll*, 9 Johns. 141.

Judgment against defendant for killing a dog. "There was no proof by which to charge the defendant, except his own confession, which the jury ought to have taken altogether, and not to have charged him with killing the dog without giving due weight to what the defendant said at the same time in justification. He killed the dog, but he did so because the dog assaulted him in the night, in the highway. It was therefore a justifiable act, and the verdict of the jury was against law and evidence." *Credit* v. *Brown*, 10 Johns. 365.

"Where a party introduces in evidence a writing as an admission of the adverse party, the whole becomes evidence in the cause, as well those parts which are in favor of the party making the admission as those which are against him, and this evidence the jury are to consider, giving to every part and the whole such weight and effect as they think it entitled to." (*Bristol* v. *Warner*, 19 Conn. 7.) Also in same case it is further said: "Therefore, where the defendant, to establish his defense and show that nothing was due to the plaintiff, introduced in evidence a letter from the plaintiff, and to repel this evidence the plaintiff referred to the same letter, claiming that in this respect it furnished evidence in his favor; this the defendant denied and objected to its being considered by the jury for that purpose, but the court instructed the jury that the defendant having himself introduced the letter had thus made it substantive evidence in the cause, and it was held that this instruction was unexceptionable."

"The rule is, that the whole of an admission is to be taken together, and that when part of a conversation or

statement is put in evidence by one party, the other is entitled to put in the whole so far as it is relevant; and it makes no difference whether the whole statement comes out upon the direct examination, or part of it is drawn out on cross-examination.—1 Greenleaf on Evidence, sec. 201; 2 Wharton on Evidence, secs. 1108, 1109; *Hatch* v. *Potter*, 2 Gilm. 725; *Phares* v. *Barber*, 61 Ill. 271." *McIntyre* v. *Thompson*, 14 Ill. App. 554.

The case of *Phares* v. *Barber, supra,* was an action against sureties on a note. The defense was a release by the giving of a mortgage by the maker. Ford, a witness, was called by plaintiff to show that the sureties, in a conversation with plaintiff, stated that they intended to make Huffman, the principal, secure the debt in some other manner. Upon cross-examination Ford was asked, "Was anything said in that conversation about releasing Phares and Croka [sureties] from the note?" Objection was sustained to the question. Mr. Justice THORNTON, speaking for this court, said (p. 275): "It is a well settled rule, that where a witness details a conversation, the party against whom the evidence is offered is entitled to the whole conversation, and any action of the court which prevents its obtainment violates this rule of law. The question was proper and the objection to it should have been overruled."

Plaintiffs, to prove the delivery of goods by them to defendants, put in evidence letters by defendants to them, which letters admitted the receipt by defendants of the goods, but stated that defendants had given to the plaintiffs' agent, Holmes, a check in payment of the goods. "The only proof of the delivery of the check to Holmes consisted of statements in letters of defendants which plaintiffs introduced in evidence as admissions of other facts. By the ruling of the court the letters were treated as conclusive evidence of the fact of delivery of the check. The statements were not in themselves unreasonable or improbable, nor was there anything in the

nature of the transaction or in the evidence tending to impeach them. The doctrine in such cases is, that the admission, with the accompanying declaration, which serves as an answer to the admission, is to be received in evidence, and the answer is conclusive.—*Howell* v. *Moores*, 127 Ill. 67; 1 Roscoe on Crim. Evidence, (8th ed.) 54, 55; *Roberts* v. *Gee*, 15 Barb. 449; *Corbett* v. *State*, 31 Ala. 329; *Arnold* v. *Johnson*, 1 Scam. 196." *Bailey* v. *Pardridge*, 35 Ill. App. 121.

In *Moore* v. *Wright*, 90 Ill. 470, plaintiff proved by a witness that defendant had said a paper presented was a copy of the original note, and on cross-examination defendant brought out that defendant at the same time stated that he had paid a sum of money which was not endorsed on the note. The court below excluded the latter evidence, and its exclusion was held to be error.

We do not think the cases cited by appellant are in conflict with the above holdings, nor do we think they support the contention of appellant.

Appellant further urges, that though the court may take the view that the letter of January 31, 1893, and the account rendered and enclosed therein, should be read together, still the instruction should not be given because appellees could not charge up to appellant any money lost with the lender of the stock, because such loss was, from the evidence, the fault of appellees. In support of this contention appellant cites authorities that it was the duty of an agent to give his principal timely notice of every fact coming to his knowledge which it may be material for the principal to know for the protection or preservation of his interest, and that the agent is bound to observe all the precautions ordinarily observed in the particular business and according to the usages of the place and the circumstances of the times within which the business is to be transacted. . These propositions as to the duty of the agent are not controverted and will be accepted generally as correct statements of the duty

of the agent, and the argument would be applicable if the facts existed upon which to predicate it. The evidence shows that the borrowing of the stock, for which appellees put up $30,000, was at the request of appellant, and that he was notified of the transaction, and that he was also notified of the length of time within which the stock should be returned, and that the time was four months, or on or before the 31st day of May, 1893, and was also further notified that the stock had been again borrowed for ninety days to hold the deal, and yet the evidence wholly fails to show that appellant took a single step or did anything until the 24th day of August, 1893, two days after he had received notice from appellees that the lender of the stock was unable to take up the stock and refund the money for the same, when appellant wrote appellees that he was informed that Mr. Koch had never put up any margins on the deal although called upon to do so, and that the stock was not sold on the market under the rules of the exchange because there was no market for it, and that in view of such facts it was the duty of the appellees to make good the amount which appellant should have received. This letter was introduced by appellant, but it was not evidence of any rule or usage, nor was there any competent evidence in the record of any rule or usage requiring appellees to call for or secure appellant with margins from the lender of the stock. In fact, the evidence wholly fails to show where this stock transaction was had,—whether in Chicago or New York. Davis states that he was unable to say where it was, as the purchases and sales aggregated 18,600 shares on the New York and Chicago stock exchanges. There is no rule of the common law, or any law that we are required to take notice of, that made it the duty of appellees to call for margins or to require the lender of stock to keep up margins to protect the value of the stock thus loaned. The proof in this case is, not that the borrowing of this stock was in the mere line of

the duty of an agent, but that the borrowing was by direction and at the request of appellant, and we know of no rule of agency existing at common law which required appellees, when directed by appellant to borrow stock and advance the money for the same, to see that the lender of the stock put up margins to protect the value of such stock., If there was any such rule, it was either a local usage or custom or rule of the stock exchange, or some rule or usage appertaining to this line of business, of which there is no proof at all except the declaration of appellant as to the duty of appellees in the letter above mentioned, and others of like tenor subsequently written, and the statement of Davis, appellant's witness, wherein he says: "It is now, and always has been, the duty of brokers, after delivery of stock is made, to guarantee the transaction absolutely and protect the customer from loss." And the further statement: "I had had transactions in stocks running up into thousands of shares, and I never had known of a case where the broker did not call margins to protect a trade of that kind." The letters above mentioned were introduced by appellant, as was the witness Davis, and the most they or his evidence show is, that it is the opinion of the writer of the letters, or Mr. Davis, that such duty existed, but whether by custom, usage or rule of the stock exchange is not shown. This evidence falls far short of establishing a usage or custom in regard to this business, and wholly fails to show any rule of either of the stock exchanges where such deals were being conducted, with reference thereto. Particular trade usages or customs, however extensive they may be, must be proven, and cannot be noticed by the courts unless so established, and this evidence falls short of the rule as recognized by any of the authorities for the establishing of such a usage. 27 Am. & Eng. Ency. of Law, 719; *Lyon* v. *Culbertson*, 83 Ill. 33; *Bissell* v. *Ryan*, 23 id. 517; *Sweet* v. *Leach*, 6 Ill. App. 212; *Wood* v. *Hickok*, 2 Wend. 501; *Coffman* v. *Campbell*, 87 Ill. 98.

Appellant could not, without showing the duty above contended for rested on appellees, tender appellees depreciated stock and demand the difference in money, and thereby so adjust the account that appellees would be indebted to him in any sum; and if it had been the duty of appellees to call for margins, and the loss to appellant had resulted from their failure to do so, still the instruction requested should have been given. The action was on the common counts for money had and received, and was not for a breach of their duty as agents or brokers, in which latter case a special count in the declaration would have been necessary averring the duty and the breach of it. *Rollins* v. *Duffy,* 14 Ill. App. 69; *Russell* v. *Gillmore,* 54 Ill. 147; 1 Chitty's Pl. 340; *Brand* v. *Henderson,* 107 Ill. 141; *Throop* v. *Sherwood,* 4 Gilm. 92; *Royalton* v. *Turnpike Co.* 14 Vt. 321; *Meyers* v. *Schemp,* 67 Ill. 469; *Morrison* v. *Rogers,* 2 Scam. 317; *Stahl* v. *Ansley,* 2 Gilm. 32; *Trumbull* v. *Campbell,* 3 id. 502; *DeClercq* v. *Mungin,* 46 Ill. 112; *Cushman* v. *Hayes,* 46 id. 145.

Appellant takes the position that the cause of action here grows out of a tort, and that under a well recognized rule, and certain authorities cited by him, the tort may be waived and a suit had on the common counts. From the declaration, of course, it cannot be determined what the exact nature of the action was, but looking to the evidence, or the case the evidence tends to make, it shows an action for a breach of contract. There are authorities which, in a broad discussion of torts or in a general definition of them, say that "the violation of a legal right" or "breach of legal duty" is a tort, and to this effect is the definition quoted from Bouvier's Law Dictionary, title "Torts," page 1125; and while this definition may be technically true in a certain sense, it is not accepted as a correct definition as applied to pleading and forms of action. To hold the rule as here insisted upon would be to abolish special pleading,—that is, special counts in a declaration in any case for viola-

tion of contract or violation of legal duty growing out of contract, and practically, under such views, all actions *ex contractu* and sounding in damages would be brought under the common counts. No standard writer on the subject of torts lays down the rule or discusses the breaches of contracts, or the breach of legal duty arising from contracts, under such head. "A tort is an act or omission giving rise, in virtue of the common law jurisdiction of the court, to a civil remedy which is not an action of contract." (Pollock on Torts, 4.) "A tort may be distinguished from a contract in that a contract involves the agreement of at least two parties, whereas a tort, as such, involves no agreement." (26 Am. & Eng. Ency. of Law,—1st ed.—72.) To the same effect are Cooley on Torts, (2d ed.) 2, and 1 Hill on Torts, 1.

We think the position of appellant upon this question unsound, and that to sustain it would be a great departure from the general rules of pleading as recognized by the courts of this country. The evidence in this case not only did not tend to establish a cause of action for the plaintiff, but shows that under the declaration filed he had no cause of action, and the instruction for a verdict for appellees was properly given.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*